891 A.2d 633 (2006)
383 N.J. Super. 205
STATE of New Jersey, Plaintiff-Appellant,
v.
Vincent DISPOTO, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 2006.
Decided February 17, 2006.
*635 Joseph D'Onofrio, Jr., Assistant Prosecutor, argued the cause for appellant (Michael M. Rubbinaccio, Morris County Prosecutor, attorney; Marcy M. McMann, Assistant Prosecutor, on the brief).
Michael R. Ascher argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito, Frost & Ironson, attorneys; Mr. Ascher, on the brief).
Before Judges LINTNER, PARRILLO and GILROY.[1]
The opinion of the court was delivered by
LINTNER, J.A.D.
We granted the State's leave to appeal, R. 2:2-3(b), from an order of the Law Division suppressing the post-arrest statement of defendant, Vincent Dispoto, and evidence, specifically a quantity of marijuana and drug paraphernalia, seized pursuant to a search warrant at defendant's office and residence. We now affirm.
On October 10, 2001, a Morris County Grand Jury indicted defendant with second-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5a, while in the possession of a weapon, N.J.S.A. 2C:39-4.1 (Count One); third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5a(1) (Count Two); fourth-degree possession of over fifty *636 grams of marijuana, N.J.S.A. 2C:35-10(a)(3) (Count Three).
We combine the procedural history and relevant facts. In April 2001, the Manhattan District Attorney's office contacted the New Jersey State Police regarding suspected criminal activity on the part of defendant. As a result, an informant advised Detective Vincent Sheridan of the State Police Narcotics and Organized Crime Bureau that defendant was associated with organized crime, supplemented his income with the sale of drugs, and was trying to hire someone to kill his wife with whom he was engaged in divorce proceedings. At the behest of the State Police, the informant agreed to be fitted with "a wire" and have a meeting with defendant. The informant met with defendant on April 25, 2001, at which time defendant made exculpatory statements when asked if he wanted his wife killed. Defendant advised the informant that he did not care what his wife did, to forget about her, and that he would be the first one suspected if anything happened to her. As a result of the information garnered by the informant, the State Police dropped the investigation into the murder for hire plot.
After Sheridan discussed the matter with his supervisor, it was decided that State Police detectives would nevertheless immediately meet with defendant's wife, Jacqueline Dispoto, and advise her of the potential threat on her life. Sheridan and two other officers met with Jacqueline. She became visibly upset when told of the possible murder for hire plot and advised them that defendant uses and sells drugs and had guns. She also told them that defendant had threatened to kill her in the past and that there was a history of domestic violence as a result of which she had obtained two Temporary Retraining Orders (TRO). The State Police then escorted Jacqueline to the Morris Plains Police Department where she applied telephonically for a third TRO. The written application indicated that a "confidential source provided information that victim is in danger of physical harm as a result of attempts being made by the defendant to hire someone to murder his wife, the above listed victim." A Municipal Court judge signed the TRO, which included a warrant to search for and seize weapons for safekeeping, listing specifically, a .38 special revolver, a silver .45 automatic, a .22 rifle with scope, and an unknown type of automatic pistol. N.J.S.A. 2C:25-28j.
In the early evening of April 25, 2001, at approximately 8:20 p.m., defendant was taken to the Morris Plains Police Department to be served with the TRO and search warrant for weapons. Shortly after 9:30 p.m., although not under arrest, defendant was given his Miranda[2] warnings, after which he signed the Miranda form. Defendant was then taken to his office accompanied by police who executed the search warrant. The police found marijuana in an employee's desk located in a cubicle. After finding the marijuana, the police secured the area pending application for a criminal search warrant. Defendant was still not placed under arrest.
At approximately 10:40 p.m., the police drove defendant to his residence. After entering his home with the officers, defendant took them upstairs and surrendered his Colt .38 revolver. After advising the police that he won the revolver in a poker game, the defendant was arrested for improper acquisition of a handgun. The police continued the weapons search, checked the pool cabana and then the garage. According to one of the officers, when they arrived at the garage, defendant went from a "George Hamilton tan to a Bella *637 Lugosi gray." After some initial resistance, defendant provided the police with the code and they opened the garage door via an electronic key pad. A locked safe was found inside the garage. The police claimed that they could smell a strong odor of marijuana coming from the safe. As they entered the garage, the police asked defendant what was in the safe. Defendant essentially responded that there were two pounds of marijuana.[3] The police then stopped the search and secured the scene pending the application for a search warrant. Defendant was handcuffed and taken to headquarters.
An application for a search warrant to search the garage for CDS and drug paraphernalia was filed the following day with the Presiding Judge of the Criminal Division (Presiding Judge). In an affidavit in support of the application, Sheridan provided the background information. The information provided was essentially the same as set forth above. It, however, left out factual information as to when defendant was arrested. It explained what was provided by the informant and defendant's wife respecting defendant's drug activity and stated that defendant was "read rights as per Miranda" while he was at police headquarters. It did not disclose that defendant was not under arrest when he was served with the TRO and weapons search warrant. The criminal search warrant issued and the police opened the safe and seized the contraband contained inside.
Defendant initially filed a motion to dismiss the indictment and to suppress the gun, drugs, and drug paraphernalia, attacking the weapons search warrant and the criminal search warrant as being issued without probable cause. After holding a plenary hearing, the motion judge found: (1) the telephonic search warrant was valid; (2) procedural safeguards were followed; (3) there was sufficient cause to issue the weapons search warrant; and (4) exigent circumstances required immediate issuance of the weapons search warrant. The motion judge, however, suppressed evidence of the revolver in the criminal trial in accordance with our holding in State v. Perkins, 358 N.J.Super. 151, 817 A.2d 364 (App.Div.2003).[4] He also found that the odor of marijuana and defendant's admission that the safe contained two pounds of marijuana provided sufficient probable cause for the Presiding Judge to issue the criminal search warrant.
Prior to the commencement of trial, pursuant to defendant's motion, the motion judge held a Miranda hearing. Following the hearing, the judge on May 24, 2005, suppressed defendant's admission that there were drugs in the safe and then sua sponte suppressed the evidence of drugs and drug paraphernalia recovered from inside the safe, finding the officers' statements that they smelled the drugs not credible. In reaching his decision, the motion judge found that the Miranda warnings given at headquarters were a nullity because defendant was not under arrest. He concluded that defendant's drugs, found in the safe, were inadmissible as fruits of the poisonous tree because he was not Mirandized following his arrest and prior to making the inculpatory statement. Referring to the absence of information in Sheridan's affidavit as to when defendant was arrested, the judge stated:
[T]he affiant deliberately or inadvertently omitted the information about the arrest *638 of defendant on the gun charges at the residence. Had the judge [issuing the criminal search warrant] known that the defendant was arrested, he most likely would have been concerned with the failure of the police to give Miranda warnings when they were required, based on the defendant's arrest on criminal charges, and inclusion of the incriminating admission, really the confession of defendant.
It is the opinion of this court that the search warrant application was so infected by these deficiencies that the results of the search under the faulty warrant must be suppressed as fruits of the poisonous tree under [Wong Sun] v. United States .... (citation omitted.)
Reevaluating his previous ruling, the motion judge concluded that after analyzing the officers' testimony and analyzing the search warrant returns, "it's improbable that the officers smelled the odor of raw marijuana, given that the marijuana was contained in individually sealed Ziploc plastic bags, while inside the Century safe, which the court has viewed as part of this matter; it was placed in evidence."
On appeal, the State raises the following points:
Point I
The Police Did Not Have To Advise Defendant Of His Miranda Rights A Second Time.
Point II
The Court Was Procedurally Barred From Reconsidering Its Ruling On The Motion To Suppress.
Point III
The Police Properly Seized The Drugs And Drug Paraphernalia.
The State concedes that the motion judge correctly determined that the police were not required to advise defendant of his Miranda rights at the time that they did because he was not under arrest or held for custodial interrogation. It maintains, however, that the warnings given, albeit pre-arrest, were sufficient to carry over to the time that defendant was arrested, approximately one and one-half hours later. They argue, therefore, that the warnings did not have to be repeated.
Miranda warnings are required only when a person is subject to "custodial interrogation." Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. It is "`custodial interrogation,' rather than a mere `focus' upon a particular suspect" that triggers the requirement that a Miranda warning be given. State v. Graves, 60 N.J. 441, 448, 291 A.2d 2 (1972); State v. Marks, 201 N.J.Super. 514, 527, 493 A.2d 596 (App.Div.1985), certif. denied 102 N.J. 393, 508 A.2d 253 (1986); see also State v. Downey, 206 N.J.Super. 382, 396-97, 502 A.2d 1171 (App.Div.1986). When questioned while under arrest or during a custodial interrogation, defendants are faced with "inherently compelling pressures which work to undermine [an] individual's will to resist and to compel him [or her] to speak where he [or she] would not otherwise do so freely." Miranda, supra, 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. Stated another way, Miranda warnings are given with the purpose "to neutralize the pressure inherent in custodial interrogation." State v. Smith, 374 N.J.Super. 425, 433, 864 A.2d 1177 (App.Div.2005). "`[I]t is the compulsive aspect of custodial interrogation'" rather than the strength of the State's suspicion, or a defendant's subjective views of the likelihood of arrest that mandates the warnings. Id. at 434, 864 A.2d 1177 (quoting State v. Brown, 352 N.J.Super. 338, 353, 800 A.2d 189 (App.Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002)). Thus, where a defendant is being treated as the equivalent of being under formal *639 arrest, he must be given the warnings. Where, however, a defendant is the subject of an officer's attempt to gather information, the required compulsion is not present to necessitate Miranda warnings. Ibid. Here, it was the arrest that triggered the need to warn. Warnings previously given under circumstances that did not amount to either custodial interrogation or formal arrest did not vitiate the need to give the warnings again when required. The judge properly excluded defendant's admission as violative of Miranda.
The State next contends that the judge was procedurally barred from reconsidering his prior order denying defendant's motion to suppress. As previously pointed out, the judge initially relied upon both defendant's statement that the safe contained two pounds of marijuana and the officers' testimony concerning the smell of marijuana emanating from the safe to find that there were sufficient facts to establish probable cause to issue the search warrant. It was not until the judge held the Miranda hearing, which included the testimony of several of the officers, that he reconsidered his prior ruling concerning the odor of marijuana.
The State's challenge to the propriety of the judge's reconsideration of an interlocutory order is devoid of merit. Our courts have long recognized "[t]he inherent power of the court to modify its own interlocutory orders prior to the entry of final judgment...." Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 261, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). Prior to the entry of a final judgment, a "trial court has complete power over its interlocutory orders and may revise them when it would be consonant with the interests of justice to do so." Ford v. Weisman, 188 N.J.Super. 614, 619, 458 A.2d 142 (App.Div.1983); see John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475, 478 (1922). In the earlier hearing, the judge considered and found that there was sufficient probable cause for the Presiding Judge to issue the criminal search warrant. By contrast, following the Miranda hearing, the judge was faced with evidence that called into question the veracity of Sheridan's affidavit, which, on its face, established probable cause. Under the circumstances, the judge's further inquiry was consistent with the interests of justice.
Generally, search warrants are strongly favored by both our Federal and State Constitutions. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The task for issuing a search warrant was described as follows:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
[Id. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.]
When reviewing the issuance of a search warrant by another judge, the court is required to pay substantial deference to the judge's determination. State v. Kasabucki, 52 N.J. 110, 117, 244 A.2d 101 (1968). Notwithstanding its favored status, under certain circumstances, a search warrant's validity may be questioned, in which case an evidential hearing may be afforded. Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978).

*640 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
[Ibid.]
Generally, doubt concerning the validity of a search warrant is to be determined in favor of the preference accorded search warrants. State v. Sheehan, 217 N.J.Super. 20, 27, 524 A.2d 1265 (App.Div.1987). Where there is a challenge, however, one must look to the four corners of the affidavit giving rise to its issuance. See State v. Novembrino, 105 N.J. 95, 128, 519 A.2d 820 (1987); State v. Howery, 80 N.J. 563, 567, 404 A.2d 632, cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979). Thus, we have held that in order to satisfy a threshold burden to be afforded an evidentiary hearing, a "defendant must make a substantial preliminary showing that the affiant, either deliberately or with reckless disregard of the truth, failed to apprise the issuing judge of material information which, had it been included in the affidavit, would have militated against issuance of the search warrant." Sheehan, supra, 217 N.J.Super. at 25, 524 A.2d 1265. Defendant must then establish by a preponderance of the evidence that the circumstances giving rise to the hearing did in fact occur. Id. at 26, 524 A.2d 1265.
The State in Point III of its appellate brief questions the judge's findings that Sheridan's affidavit presented untrue information, which misled the Presiding Judge to sign a warrant that he might otherwise have questioned. The judge did not believe the officers' testimony that they could smell the odor of raw marijuana emanating from the safe. He found that Sheridan excluded information about defendant's arrest from his affidavit which, had it been provided, would have caused the judge to question the efficacy of defendant's admission that the safe contained two pounds of marijuana. We note additionally that the information that defendant was given Miranda warnings at police headquarters, combined with the failure to address Miranda when defendant was arrested, left the impression that defendant was properly afforded his Miranda rights prior to his admission. When defendant's admission is excluded, the only evidence establishing probable cause is the purported odor of marijuana.
Our standard of review is whether there is sufficient credible evidence present in the record to uphold the findings of the Law Division. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). An appellate court is not in a good position to judge credibility and should not make new credibility findings. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); State v. Barone, 147 N.J. 599, 615, 689 A.2d 132 (1997) (the appellate court may not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence"). A trial judge has the opportunity to judge the demeanor of the witnesses. Accordingly, the judge's credibility findings are entitled to our deference. Locurto, supra, 157 N.J. at 474, 724 A.2d 234.
The State's argument that the motion judge should have deferred to the credibility assessment made by the Criminal Presiding judge who issued the search warrant misses the mark. The evidentiary hearing presented facts which focused upon the information provided in the affidavit prepared in support of obtaining the search warrant, whether it was accurate or inaccurate and, if inaccurate, whether it *641 was a misrepresentation of the truth or a mistake born out of neglect. Here, there were sufficient facts not available to the judge issuing the search warrant to form the basis for the motion judge's later finding that Sheridan's affidavit omitted facts, which cast doubt on the veracity of the affiant's statement concerning the odor of marijuana, without which a warrant would not have issued.
After the warrant was executed, the marijuana was found stored in separate sealed zip-lock bags inside the locked Century safe, which was viewed by the motion judge and placed into evidence. The omission of critical information correlating the time when defendant was arrested and the inclusion of defendant's admission, which taken alone provided strong indicia of probable cause, bolstered the claim that the arresting officers could detect the smell of marijuana. Likewise, the impression left by the affidavit that defendant had been properly apprised of his Miranda rights an hour and one-half earlier at police headquarters provided further grist for the mill.
Once defendant's pre-arrest Miranda warnings were deemed ineffective and the post-arrest admission excluded, the only remaining evidence establishing probable cause for the warrant was the purported odor of marijuana. Thus, the motion judge's subsequent finding that the officers' testimony that they detected the odor of marijuana at the scene was not credible was tantamount to a determination that the warrant was issued based upon misinformation in derogation of the truth, rather than an innocent mistake. Simply stated, there was sufficient credible evidence for the judge to disregard the officers' claims that they smelled marijuana and find that the only probable cause relied upon by the police in obtaining the search warrant, which resulted in the seizure of the contraband, was defendant's suppressed admission. As such, the judge properly determined that the drugs and drug paraphernalia recovered from inside the safe were fruits of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Affirmed.
NOTES
[1] Judge Gilroy did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The exact response from defendant differs slightly depending upon the testimony of five officers present at the time.
[4] It was later determined that the .38 revolver was properly registered to defendant and, therefore, its suppression is not the subject of this appeal.