# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3821-18T1
                A-3822-18T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

WALTER J. SOMICK and
ABRAHAM GARCIA,

    Defendants-Respondents.

---

Argued August 5, 2019 – Decided August 21, 2019

Before Judges Sabatino, Rose and Mitterhoff.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 15-07-0107 and 15-07-0108.

Frank Muroski, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Frank Muroski, on the brief).

Brian J. Neary argued the cause for respondent Walter Somick (Law Offices of Brian J. Neary, attorneys; Brian J. Neary, of counsel and on the brief; Jane M. Personette, on the brief).

John D. Lynch argued the cause for respondent Abraham Garcia (John D. Lynch, attorney, joins in the brief of respondent Walter Somick).

PER CURIAM

By leave granted, the State appeals from a March 11, 2019 order suppressing evidence seized from municipal premises pursuant to a search warrant. A Law Division judge granted the motion filed by defendants Walter J. Somick and Abraham Garcia, following a <u>Franks</u> hearing.[1] The State primarily contends the motion judge improperly concluded the detective's sworn affidavit, submitted in support of the warrant application, included multiple willfully false and misleading statements and omitted other material statements.

These appeals, which we consolidated for purposes of our opinion, essentially require us to decide whether the purported misstatements and omissions were material, thereby vitiating the issuing judge's finding of probable cause to support the warrant application. In particular, the State advances the following arguments on appeal:

> [POINT I]
>
> THE JUDGE'S SUPPRESSION OF THE FRUITS OF THE SEARCH WARRANT BASED ON HIS

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

SIGNIFICANT LEGAL AND FACTUAL ERRORS SHOULD BE REVERSED.

A.   The judge erred in even granting defendants a <u>Franks</u> hearing to challenge the search-warrant affidavit.

B.  The judge improperly shifted the burden to the State in finding that the affiant's alleged omission was a deliberate falsehood in the affidavit.

C.  Not only were there no deliberate falsehoods in the affidavit, but the judge's misperceived omissions were immaterial in any event.

D.   The judge grossly erred in naming in his ruling who[] defendants thought was the confidential informant.

E.   Given the judge's manifest hostility toward the State's case and its witnesses and the pre-judgmental nature of the judge's handling of the matter from the beginning, this case should be returned to a different judge.

After reviewing the record in light of these contentions, and the applicable law, we reverse and vacate the order granting suppression, and remand the matter to the Law Division for further proceedings consistent with this opinion.

I.

Because we conclude the motion judge erred in his analysis, we commence our review with a summary of the relevant legal principles to give

context to the judge's decision and the sufficiency of the search warrant application.

Ordinarily, we "must uphold a trial court's factual findings at a motion-to-suppress hearing when they are supported by sufficient credible evidence in the record." State v. Hathaway, 222 N.J. 453, 467 (2015) (citing State v. Elders, 192 N.J. 224, 244 (2007)). We owe no such deference, however, to the court's interpretation of the law. Ibid. Whether a search warrant was supported by adequate probable cause is a question of law, which we review de novo. See State v. Handy, 206 N.J. 39, 44-45 (2011).

A search executed pursuant to a warrant enjoys the presumption of validity. See State v. Marshall, 199 N.J. 602, 612 (2009). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)). The defendant, therefore, bears the burden of challenging the search, and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause exists where there is "a reasonable ground for belief of guilt" based on

facts of which the officers had knowledge and reasonably trustworthy sources. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)).

Further, "[w]hen reviewing the issuance of a search warrant by another judge, the [motion judge] is required to pay substantial deference to the [issuing] judge's determination." State v. Dispoto, 383 N.J. Super. 205, 216 (App. Div. 2016), modified on other grounds, 189 N.J. 108 (2007) (citing State v. Kasabucki, 52 N.J. 110, 117 (1968)). Nonetheless, "under certain circumstances, a search warrant's validity may be questioned, in which case an evidential hearing may be afforded." Ibid. (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

Pursuant to Franks and its progeny, the Fourth Amendment requires the court to hold a hearing at the defendant's request only if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" Franks, 438 U.S. at 155-56; see also State v. Howery, 80 N.J. 563, 567-68 (1979). A misstatement is considered material if, when excised, the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. Howery, 80 N.J. at 568 (citing Franks,

438 U.S. at 171). "If at such inquiry the defendant proves [a] falsity by a preponderance of the evidence, the warrant is invalid and the evidence seized thereby must be suppressed." Id. at 566.

Similarly, "[t]hese requirements apply where the allegations are that the affidavit, though facially accurate, omits material facts." State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992). An omission is deemed material if the issuing judge likely would not have approved the warrant if the judge had been apprised of the omitted information. State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987). However, "[t]he test for materiality is whether inclusion of the omitted information would defeat a finding of probable cause; it is not . . . whether a reviewing magistrate would want to know the information." State v. Smith, 212 N.J. 365, 399 (2012).

If probable cause exists despite the errant information, the search warrant remains valid and an evidentiary hearing is unnecessary. See Sheehan, 217 N.J. Super. at 25. If the defendant meets the requisite threshold burden, however, the court must conduct a hearing. Ibid. In turn, "[i]f at such inquiry the defendant proves by a preponderance of the evidence that the affiant, deliberately or with reckless disregard for the truth, excluded material information from the affidavit which, had it been provided, would have caused

6

the judge to refuse to issue the warrant, the evidence must be suppressed." Id. at 25-26.

We pause to note the State did not move for leave to appeal from the judge's oral decision granting the <u>Franks</u> hearing, nor the ensuing orders denying the State's motion for reconsideration. We therefore decline to consider the State's Point IA on appeal. <u>See</u> <u>Towpath Unity Tenants Ass'n v. Barba</u>, 182 N.J. Super. 77, 81 (App. Div. 1981) (limiting appellate review of a specific interlocutory order for which leave to appeal has been granted); <u>see also</u> <u>State v. King</u>, 387 N.J. Super. 522, 528 n.1 (App. Div. 2006) (noting the defendant did not seek leave to appeal from a specific provision of a judge's order); <u>State v. Rambo</u>, 401 N.J. Super. 506, 520 (App. Div. 2008) ("It is a fundamental of appellate practice that we only have jurisdiction to review orders that have been appealed to us."). We therefore confine our review to the order granting suppression following the hearing.

## II.

Applying the guiding principles stated above, we turn to the pertinent facts and procedural history from the record before the motion judge.

By way of background, the dispute over the veracity of the affidavit arose following defendants' separate State grand jury indictments for second-degree

7                                                                A-3822-18T1

official misconduct, N.J.S.A. 2C:30-2; third-degree theft by deception, N.J.S.A. 2C:20-4; third-degree tampering with public records or information, N.J.S.A. 2C:28-7(a)(1) and (2); and fourth-degree falsifying records, N.J.S.A. 2C:21-4(a).[2] The charges emanated from allegations that defendants "ma[de] and submit[ted] false and fraudulent time sheets to the Township of North Bergen" and "receive[d] paid compensation to which [they] were not entitled" during the course of their employment with the Township's Department of Parks and Recreation (DPR).

The affiant was the sole witness to testify at the three-day Franks hearing, which intermittently spanned ten months. Defendants did not testify nor present any witnesses on their behalf.[3] Among other documents, the twenty-one-page affidavit supporting the search warrant was admitted in evidence.

---

[2] The matters were venued in Hudson County. Before the matters were consolidated, Garcia filed pretrial motions. Another judge denied Garcia's motions to dismiss the indictment and disclose the identity of the confidential informant named in the affidavit; and adjourned Garcia's motion to suppress evidence seized pursuant to the search warrant. After the matters were consolidated, Somick filed similar motions, which were assigned to the judge who decided the motion under appeal. After granting the Franks hearing that is the subject of this appeal, the motion judge reserved decision on the remaining motions, which apparently are still pending.

[3] Although defendants bore the burden of proof at the hearing, Jones, 179 N.J at 388, the detective testified on behalf of the State. Apparently, the judge held

The warrant authorizing the search of the DPR's administrative and clerical offices and a Township storage facility was issued on March 2, 2015. It was supported by the affidavit of a detective, who was assigned to the Division of Criminal Justice Corruption and Fraud Bureau (Division) for four years as of that date.

As set forth in the affidavit, the detective had extensive training and experience in investigative procedures, including surveillance, witness interviews, and "the writing and execution of numerous search warrants." Notably, the detective did not include public document requests pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13 as one of those procedures. Prior to his four-year employment with the Division, he was employed as an officer and detective with the Princeton Police Department. During his combined law enforcement experience, the detective "ha[d] conducted dozens of investigations involving different types of criminal activity, specifically related to white collar crimes and theft, fraud and the falsification of documents."

---

an off-the-record conference in chambers "regarding the procedural manner in which th[e] hearing w[ould] proceed." The State did not object, on the record, to that procedure.

The probable cause section of the affidavit is set forth in paragraphs six through twenty-one.  The introductory paragraphs of that section disclose the genesis of the Division's investigation of defendants.  In sum, in April 2011, the Division commenced an investigation of the "misus[e] of department manpower, equipment, and material" by James Wiley, a former superintendent of the Township's Department of Public Works (DPW).  The following year, Wiley pled guilty to second-degree conspiracy to commit official misconduct, N.J.S.A. 2C:5-2, for misusing DPW resources at his residence.  Thereafter, "Wiley became a cooperator with the Division's ongoing investigation into various allegations of criminal activities involving several municipal bodies of the Township of North Bergen."

According to the next paragraph of the affidavit, "Wiley provided details and information regarding the ongoing 'no show' employment of several individuals, including [defendants] . . . ."  Garcia was employed full time as the security supervisor for the Township's Board of Education (BOE) and an assistant coach for the high school's football team.  However, Garcia allegedly submitted time sheets reflecting he worked twenty-one hours per week with the DPR.  Somick periodically contracted to perform electrical work for the BOE,

but allegedly submitted time sheets reflecting he consistently performed sixty hours of work, per two-week pay period, as a DPR employee.

The following paragraph summarizes the investigative procedures personally undertaken by the detective to support the warrant application. In particular, the detective, "conducted both physical and electronic surveillance, using pole cameras placed at [defendants'] residences, in order to determine whether either, or both, were being compensated by the DPR for work or services that they had not or could not have performed." Those investigative steps, as set forth more specifically in other paragraphs, are undisputed; the crux of the issue in these appeals arises from statements in, and omissions from, the ensuing paragraphs.

For example, the affidavit provides (emphasis added):

> To further my investigation, I was assisted by a confidential informant, CI #1144, an employee of the Township of North Bergen, who provided to me copies of time sheets that [defendants] submitted to the DPR on a bi-weekly basis . . . starting in the Fall of 2013 . . . [and continuing through] the months that followed installation of the pole camera [on Somick's residence on October 3, 2014].

According to the detective's testimony at the hearing, CI #1144 did not tender copies of defendants' time sheets directly to him, but rather provided the documents to Wiley from Fall 2013 to December 2014. Wiley, in turn, furnished

the documents to the detective as part of his ongoing cooperation with the Division. CI #1144 utilized Wiley as a "middleman" because he or she wished to remain anonymous, and CI #1144 "knew that Mr. Wiley was a cooperating witness and had the ear of the [S]tate's corruption bureau." Although the detective knew CI #1144 worked for the Township during the course of the year that he or she provided the documents, he did not learn CI #1144's identity until their meeting on December 10, 2014.

At that December 10 meeting, CI #1144 was conferred confidential informant status. Thereafter, CI #1144 did not provide any other documents through Wiley or directly to the detective, nor did they partake in any other meetings. The detective testified at the hearing he did not include in his affidavit the date on which CI #1144 became a confidential informant because he did not believe that fact was material, i.e., that date "had no bearing or effect on the case" because it did not "point to . . . any specific actions or illegality o[f] any kind of conduct."

Because the detective did not believe Wiley's position as the middleman was material to a probable cause determination, he did not include that fact in his affidavit. The detective elaborated:

> Mr. Wiley had no independent knowledge of the validity or v[e]racity of these documents. These

documents were simply being relayed through Mr. Wiley from the confidential informant. And by that I mean he had no first[-]hand knowledge of where the documents came from or that they were real.

To gauge the reliability of the documents, at the December 10 meeting, the detective "reviewed each and every one of th[e] documents with the confidential informant who confirmed to [him] that the[y] were photocopies of original documents that had not been disturbed as they existed in town hall . . . ." Among other things discussed during that meeting, CI #1144 specified the location within the Township's facilities of the documents to be seized. Based on his personal observations during other investigations, the detective knew the Township archived the documents in the storage facility identified by CI #1144.

Following his meeting with CI #1144, the detective issued a grand jury subpoena to Automatic Data Processing, Inc. (ADP), the Township's payroll service provider. The ADP payroll records confirmed defendants "had been paid for the same amount of hours per period" as submitted to the DPR. Paragraph sixteen of the affidavit specifies that corroboration.

Thereafter, the detective drafted an application for a warrant to search the administrative and clerical offices located in the DPR and the Township's storage facility. Of note, the warrant application not only requested defendants'

original time sheets, but also encompassed several categories of documents and records pertaining to DPR "employees from 2010 to the present." Those items included:

> employee personnel files, disciplinary files, job descriptions, lists of current or former employees, time-keeping files, payment files, payroll and wage sheets/records, overtime sheets/records, overtime certification reports/records, sign-in or roll-call sheets, attendance sheets, Supervisors' daily reports, assignment reports, work reports, work orders, tasks, duties, overtime assignment reports, responsibilities, vehicle assignments, whether permanent or temporary, truck/equipment/vehicle logs, responsibilities, equipment assignments, requests or grants for any type of leave or time off from work, records of time worked, records of time off, and any record of accountability, whether written, typed, recorded or stored in digital or computer form.

According to the detective's testimony at the Franks hearing, he and two deputy attorneys general assigned to the investigation met with the issuing judge who "had a few general questions and specifically asked about the v[e]racity of the confidential informant[,] noting that there was no language in [the affidavit] asserting that the confidential informant had provided reliable information in the past." See State v. Smith, 155 N.J. 83, 93 (1998) (recognizing an informant's veracity and basis of knowledge for the information supplied are two important factors in determining whether the informant's tip supports probable cause for

issuance of a warrant).  The detective informed the issuing judge he omitted that routine paragraph because he did not have a prior relationship with the confidential informant.  However, the detective told the issuing judge about his personal knowledge of the Township's storage facility for the documents at issue.

Pursuant to the issuing judge's request, the detective then added the following language to paragraph seventeen, which begins with the detective's "discussions with CI #1144" about the informant's knowledge of the municipal premises to be searched:

> Through my experiences on unrelated matters, I also have personal knowledge to corroborate the use of th[e] basement area [of the Law and Public Safety Building] by the Township of North Bergen as a storage and archiving facility for other [d]epartments.  I have visited this location previously on another matter, and have observed archived payroll documents and other documents stored within this area, as corroborated by my discussions with CI #1144.

Oral argument on the suppression motion was held nine months after the conclusion of the detective's testimony.  The motion judge reserved decision and thereafter issued a lengthy written decision ultimately finding, for a confluence of reasons, "the State in its warrant application engaged in material omissions and misstatements that were included intentionally and those omissions and

15

misstatements were necessary to the finding of probable cause."  According to the motion judge:

> In this case, the State, in lieu of an OPRA request or in lieu of following its own protocols, chose to make deliberate misstatements to mislead the issuing judge into believing that a properly vetted source with lawful access to government documents and the authority to remove those documents had been working for and with the State for an extended period of time to build a case against . . . defendants.  This was simply not true, there was never any privity between the State and the would-be informant until after all documents had been delivered and thus these deliberate misstatements were necessary to attempt to sanitize the State's behavior during its warrant application process.

Concluding defendants "met both prongs of the Franks material false statement test and alternatively, the Sheehan material omission test[,]" the judge suppressed the evidence seized from the municipal premises.  This interlocutory appeal followed.

## III.

Based on our de novo review of the record, Handy, 206 N.J. at 44, we conclude the motion judge erred in his analysis and improperly suppressed the evidence seized from the municipal premises.  We do so for multiple reasons.

## A.

Initially, the motion judge determined "defendants had no reasonable expectation of privacy in the payroll documents at issue, and under normal circumstances these documents would not be subject to a suppression motion if obtained through an OPRA request." We agree with the judge that defendants had no reasonable expectation of privacy in their time sheets. See e.g., State v. Sloane, 193 N.J. 423, 435-37 (2008) (citing Doe v. Poritz, 142 N.J. 1, 28 n.8 (1995)). Those payroll records are public records. See N.J.S.A. 47:1A-10.

We part company, however, with the judge's determination that "[t]he State bypassed the legal OPRA channel to obtain the documents at issue . . . ." The judge's suggestion that the State was duty-bound to make an OPRA request for defendants' time sheets is misplaced and unsupported by any authority. Indeed, law enforcement is not obligated to utilize OPRA before, during or after it utilizes a particular, chosen investigative path. Contrary to the judge's finding, see Hathaway, 222 N.J. at 467, there is no evidence in the record that the State considered – or should have considered – an OPRA request as an option to receiving the time sheets from CI #1144, even though he or she had not yet been formally vetted as a confidential informant.

Notably, the detective testified he did not consider issuing a grand jury subpoena for the original time sheets and the other documents itemized in the warrant because he was concerned about the destruction of evidence. Therefore, even if an OPRA request were a law enforcement tool, the detective would have had the same concerns in utilizing that procedure. We therefore disagree with the motion judge's finding that the reason for not pursuing an OPRA request was pretextual where, as here, the detective testified law enforcement had not ruled out whether defendants' supervisors were complicit in their alleged criminal activity.

B.

We next address the motion judge's application of State v. Saavedra, 222 N.J. 39 (2015), to the facts of the present case, and his conclusion that CI #1144 was involved in the same "official misconduct" as the defendant in Saavedra. Unlike CI #1144, the defendant in Saavedra was a North Bergen BOE employee, who "removed or copied" hundreds of original and photocopied documents to support her employment discrimination case against the Board. Unlike defendants' time sheets, here, the documents in Saavedra contained "highly confidential student educational and medical records that were protected by federal and state privacy laws." The defendant moved to dismiss the indictment

for official misconduct and theft by unlawful taking, claiming immunity under Quinlin v. Curtiss-Wright Corp., 204 N.J. 239 (2010), because she intended to use the documents to support her employment discrimination civil suit. Saavedra, 222 N.J. at 46-47.

The Court in Saavedra upheld the indictment, reasoning the State had presented prima facie evidence of official misconduct based on testimony before the grand jury that "the documents contained highly confidential and private information about students, that [the] defendant was not given permission to have them in her personal possession, . . . [the] defendant's conduct violated the Board's confidentiality policies . . . [and her conduct] was unauthorized by her employer." Id. at 61. Further, in addressing the theft by unlawful taking charge, the Court observed "a significant portion of those documents were the Board's 'original' copies . . . and others were photocopies that served as the Board's sole file copy, the removal of which left the Board without the document in its files." Id. at 62. Accordingly, the State presented prima facie evidence that the documents were taken "'with purpose to deprive' the Board of them." Ibid.

Significantly, in Saavedra, the State demonstrated the defendant's conduct, if proven, violated federal and state privacy laws, and contravened the Board's internal confidentiality policies. Notwithstanding their burden, here,

19

defendants failed to present evidence that CI's #1144's conduct violated any statute, regulation or policy, nor do they contend the timesheets are confidential. Rather, in their merits brief, defendants argue "it is not known what other records, perhaps containing sensitive and confidential information, CI #1144 accessed in . . . pursuit of . . . defendants' payroll records." That contention is mere speculation.

As we stated above, the judge expressly found defendants' time sheets were public records. Further, unlike the defendant's conduct in Saavedra, CI #1144 provided photocopied time sheets to the State; the originals were retained in the DPR's files. Unlike the Board in Saavedra, the DPR was not deprived of the information contained in the time sheets. Unlike the defendant in Saavedra, who was charged with official misconduct, CI #1144 provided the documents to the State to disclose defendants' alleged official misconduct.

Moreover, Saavedra, which was decided after the detective drafted the warrant application in the present matter, did not announce a bright-line rule, nor conclusively decide the illegality of the defendant's conduct. As the motion judge here acknowledged, the Court in Saavedra "did not bar an application of a claim of right defense, if asserted at trial. See [i]d. [at 47]." The motion judge

A-3822-18T1

also acknowledged, by taking judicial notice at the hearing, that the Court decided <u>Saavedra</u> after the detective drafted the affidavit, here.

Importantly, the detective testified he did not suspect CI #1144 illegally procured defendants' time sheets, and "discussed . . . with the [issuing] judge that the documents were obtained by a [T]ownship of North Bergen employee[,] who was making copies and providing them to [the Division's] investigation on an ongoing basis." The issuing judge expressed no concerns to the detective that the documents might have been illegally obtained by CI #1144. Thus, based on the record before us, we conclude the Court's holding in <u>Saavedra</u> does not compel suppression of the subject documents in the present case.

## C.

We next consider the judge's determination that "suppression [wa]s proper where an Attorney General [d]etective (and the [d]eputy [a]ttorney [g]eneral, . . . who reviewed and approved the affidavit) made no less than seven . . . false statements that were necessary for a finding of probable cause in [the] application for [the] search warrant." According to the judge:

> <u>Misstatement 1)</u> "To further my investigation, <u>I was</u> <u>assisted by a confidential informant, CI #1144</u>, an employee of the Township of North Bergen, who provided to me copies of time sheets that [defendants] submitted to the DPR on a bi-weekly basis." . . .

Misstatement 2) "CI #1144, provided to me time sheets as submitted to the DPR by or on behalf of [defendants] starting in the Fall of 2013." . . .

Misstatement 3) ". . . I also continued to receive time records from CI #1144 through November 4, 2014." . . .

Misstatement 4) "I continued to receive SOMICK's payroll documents from CI #1144 in the months that followed the installation of the pole camera." . . .

Misstatement 5) "Through my discussions with CI #1144, I learned that all time-keeping and payroll records are submitted to and maintained at the [DPR], which is located in the Township of North Bergen Offices at 4233 Kennedy Boulevard, North Bergen, New Jersey." . . .

Misstatement 6) "I also learned through my discussions with CI #1144 that, after an unspecified period of time, the time keeping and payroll records are physically transferred to an archive at the storage facility of the Township of North Bergen, located in the ground and/or basement floor of the North Bergen Township Law & Public Safety Building . . ." . . .

Misstatement 7) "Through my discussion [sic] with CI #1144, I also learned that time-keeping and payroll records submitted to the [DPR] are entered into and processed by a computer station that is located within the [DPR]." . . .

In essence, the judge found those statements were "deliberately false" to the extent they could be construed as "label[ing] CI #1144 as a [confidential informant] at any point in time prior to December 10, 2014[,]" and because the

22

detective "asserts he had more than one conversation with CI #1144" when they only participated in one meeting.

We recognize the State formally designated CI #1144 as a confidential informant prior to applying for the warrant and, as such, the detective's use of that status to describe the documents' source, at the time he swore to the contents of the affidavit, was technically correct. However, we appreciate the motion judge's concerns that the affidavit gives the incorrect impression the detective communicated directly with CI #1144 before December 10, 2014. Further, the detective's use of the term, "discussions" in the plural may be interpreted as various discussions that occurred during the meeting on December 10, 2014 or, as the judge found, multiple conversations over the course of time. Notably, however, defendants did not elicit any testimony from the detective, nor produce any evidence whatsoever as to his intention in using the plural term, "discussions."

Nonetheless, to the extent the wording of the seven enumerated statements was subject to more than one interpretation, defendants failed to establish the materiality of any of those statements, Stelzner, 257 N.J. Super. at 235, where, as here, the affidavit still "contains facts sufficient to establish probable cause" even if they were absent. Howery, 80 N.J. at 568. Accordingly, we are

23

unpersuaded those particular assertions materially undermine the affidavit's bona fides or the independent evidence that amply establishes probable cause to issue the warrant. See, e.g., Franks v. State, 398 A.2d 783, 785-86 (Del. 1979) (on remand from the United States Supreme Court, holding that misstatements in the affidavit about the affiant's source of certain information did not require the search warrant to be invalidated because, excised of those misstatements, there was sufficient independent proof to support the warrant's issuance).

Indeed, it is beyond peradventure that the affidavit accompanying the search warrant included ample facts, without the seven misstatements, establishing probable cause that the municipal premises specified in the warrant application would yield the subject documents. The detective corroborated the time recorded on defendants' time sheets, which had been furnished by CI #1144, through ongoing personal surveillance, video surveillance and a comparison of the subpoenaed ADP payroll records with the copies of defendants' timesheets. Based on his own personal knowledge from prior investigations, the detective also corroborated CI #1144's information specifying the location of the records to be seized in the Township's storage facility. See Keyes, 184 N.J. at 555 (citation omitted) (recognizing probable cause may be based on information received from informants, as long as there is "substantial evidence in the record

to support the informant's statements").  In sum, all of those facts were set forth in the affidavit and established probable cause for issuance of the warrant; none of those facts was inherently false.

D.

We next consider the motion judge's determination that "there are striking omissions in the affidavit . . . and had they been included it would have caused the judge to refuse to issue the warrant."  According to the judge:

> Chief among the material omissions is the false narrative that CI #1144 was a confidential[]informant who contributed to the State's investigation consistently and met with and spoke to [the d]etective . . . throughout the investigation and assisted the [d]etective in corroborating the findings of the [d]etective's physical surveillance of defendants' residences. . . .
>
> Nowhere in the affidavit does [the d]etective . . . disclose to the issuing judge that prior to December 10, 2014, CI #1144, he and the team made up a status called a "conditional-confidential informant," or an "intended" confidential informant.

Accordingly, the judge found the detective violated the Attorney General's Standard Operating Procedure 29 (SOP 29)[4] for conferring confidential informant status on CI #1144.  In particular:

---

[4]  At our request, the State supplemented the appellate record with a copy of SOP 29, which had been provided to the motion judge.

> The document source [wa]s handled throughout all material stages by a known convicted felon, James Wiley, from the first document turned over to the State to the last. The source is never vetted in accordance with SOP 29, and the State already had in its possession those documents it sought by the issu[ance] of a warrant. Remarkably, <u>none of this was made known to the issuing [j]udge</u>.

Our examination of the record in this matter discloses no evidence of intentional misconduct or reckless disregard for the truth on the part of the detective by omitting the information the motion judge deemed material. As our description of the detective's testimony at the <u>Franks</u> hearing discloses, the detective did not believe the omitted information was material to the determination of probable cause, a conclusion with which we concur. <u>See</u> <u>Smith</u>, 212 N.J. at 398-99 (citation omitted) ("There is no requirement that a warrant affidavit fully describe all steps taken, all information obtained, and all statements made by witnesses during the course of an investigation."). At most, the issuing judge might have "want[ed] to know the [omitted] information[,]" <u>id.</u> at 399, but it was not material to the determination of probable cause.

As we stated above, two factors for the issuing court to consider when determining probable cause, based on information provided by a confidential source, are the informant's "veracity" and "basis of knowledge." <u>Smith</u>, 155 N.J. at 93. Here, the issuing judge did not question CI #1144's basis of knowledge.

26

Indeed, there is no suggestion in the record, that the content of defendants' time sheets was inaccurate. Rather, the affidavit contained four paragraphs, spanning four pages of the affidavit, detailing the detective's personal surveillance and video surveillance of defendants' presence at locations other than the DPR, which corroborated the time reported in defendants' DPR time sheets. The affidavit also stated the subpoenaed documents obtained from ADP corroborated the time billed.

Because the detective did not provide the "routine" paragraph concerning CI #1144's past reliability, the issuing judge expressed concern about the CI's veracity. Notably, the judge asked the detective to amend paragraph seventeen to include his personal knowledge of the location of the items to be seized, thereby corroborating the source's information concerning the places to be searched.

Our examination of the omissions in question satisfies us that those statements were not material, and that ample, unassailable evidence apart from those statements established probable cause for issuance of the warrant. In State v. Meighan, 173 N.J. Super. 440, 448 (App. Div. 1980), the affiant omitted that an eyewitness, who eventually identified the defendant, was unable to do so at first. In dicta, we concluded the defendant failed to meet the Franks standard,

27

i.e., "that the affiant's statements were materially untrue, that such untrue statements were made knowingly and intentionally or recklessly or that the magistrate would not have issued, or could not have found probable cause to issue, the warrant had he known all the facts." Id. at 449. So too, in this case, the affidavit provided ample probable cause for the issuance of the warrant. Omitting any reference to the detective's one-time meeting with CI #1144, his or her anonymity when providing the documents through Wiley, and the State's apparent failure to strictly adhere to the Attorney General's SOP for vetting confidential sources when the defendants' time sheets were provided,[5] does not undermine that conclusion.

E.

We next address the State's contention that the motion judge improperly identified CI #1144 by full name in his decision, noting CI #1144's identity was not necessary to resolve the issues raised and defendants have not provided any authority to suggest otherwise. Moreover, the first motion judge denied Garcia's motion to disclose the CI, and the present motion judge adjourned Somick's motion in that regard. Accordingly, CI #1144 should not have been identified.

---

[5] In any event, a deviation from the SOP does not automatically invalidate the State's action. See State v. Henderson, 208 N.J. 208, 278 (2011).

On remand, CI #1144's full name should be redacted forthwith from the judge's written decision and any related filings.

F.

Finally, in view of the motion judge's extensive findings regarding the veracity of the detective and deputy attorney general who approved the warrant, on remand the matter should be assigned to a different judge. See State v. Camey, ___ N.J. ___, ___ (2019) (slip op. at 36) (remanding and referring the matter for reassignment "[b]ecause the original judge made extensive credibility determinations about the witnesses"); see also State in the Interest of C.F., 458 N.J. Super. 134, 147 (App. Div. 2019) (quoting Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005)) ("In an abundance of caution, we direct that this matter be remanded to a different judge for the plenary hearing to avoid the appearance of bias or prejudice based upon the judge's prior involvement with the matter . . . .").

In light of our disposition on appeal, we need not reach the State's subsidiary argument that the motion judge impugned the reputations of the detective and the deputy attorney general who approved and reviewed the warrant application.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3822-18T1