217 N.J. Super. 20 (1987)
524 A.2d 1265
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES J. SHEEHAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 1987.
Decided April 15, 1987.
*21 Before Judges PRESSLER, GAULKIN and BAIME.
*22 Alfred A. Slocum, Public Defender, attorney for appellant (Sara K. Walsh, designated counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Julie Davidson, Deputy Attorney General, of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
Following the denial of his motion to suppress evidence, defendant entered a retraxit plea of guilty to possession of cocaine (N.J.S.A. 24:21-20a(1)). The trial judge imposed a probationary term of two years and fined defendant $250. In addition, defendant was assessed a penalty of $25 payable to the Violent Crimes Compensation Board. The sole argument advanced on appeal is that a warrant authorizing the search of the entire house in which defendant resided was unconstitutionally broad. We disagree and affirm.
The affidavit upon which the search warrant was issued was prepared by Detective George L. Arroyo, a highly experienced member of the narcotics bureau of the New Jersey State Police. The affidavit recited the following facts. Detective Arroyo received information from a confidential informant, who had proved reliable in the past, that drugs were being distributed from a house located at 674 Hamilton Street in the City of Rahway. Based upon the receipt of this information, the police established a surveillance of the premises during which they observed the informant conduct a drug transaction with an individual identified as Jeffrey Till. According to Detective Arroyo, the informant entered the house and emerged shortly thereafter with approximately one gram of cocaine. Ten days later, the detective, while acting undercover, entered the premises and purchased additional drugs from Till. Further investigation revealed that the house was owned by Florence M. Sheehan. Although the affidavit is devoid of any statement disclosing whether the premises constituted a single or multi-family *23 dwelling, a fair reading of the detailed description contained therein supports the thesis that the house was a single-family residence. In any event, based upon his experience Detective Arroyo concluded that controlled dangerous substances and various types of drug paraphernalia could be found in the house.
Predicated upon these facts, a Superior Court judge issued a warrant authorizing the search of the entire premises. During the ensuing search, the police confiscated cocaine and other drugs from Till's bedroom, a bedroom occupied by defendant and the kitchen.
Following his indictment, defendant filed a motion to suppress evidence pursuant to R. 3:5-7. The trial judge granted defendant's request for an evidentiary hearing to present facts which were allegedly omitted from the affidavit. At the hearing, Detective Arroyo amplified the affidavit by testifying that the house in which the drug purchases took place was a single-family, two-story residence with entranceways in the front and back. The second floor consisted of three bedrooms and a bathroom separated by a narrow hallway. According to the detective, both drug transactions had occurred in a bedroom occupied by Till. Detective Arroyo testified that Till kept the illicit drugs in a nightstand immediately adjacent to his bed. The doors to the other two bedrooms were open both when the detective purchased the cocaine and when he entered the premises to execute the search warrant. According to Detective Arroyo, he did not know that the other two bedrooms were occupied until the day of the search. At that time, the detective first became aware of the fact that defendant and his sister resided in the house along with Till and that each had a separate bedroom.
In denying defendant's motion to suppress, the trial judge determined that the facts recited in the affidavit were sufficient to establish probable cause to search the entire house. The judge rejected the argument that the warrant was overly broad *24 and that the search should have been confined to Till's bedroom. The fact that the drug purchases had occurred in the bedroom occupied by Till was found to be immaterial. The judge concluded that it was not incumbent upon Detective Arroyo to set forth these facts in his affidavit.

I
Before turning our attention to the merits of the arguments advanced, we are constrained to note certain procedural problems which, although not raised directly by the parties, cause us considerable concern. Specifically, we question whether defendant should have been permitted to challenge the legal efficacy of the search warrant based upon information known to the affiant but not set forth in the supporting affidavit and hence not considered by the issuing judge.
As a general rule, questions concerning the validity of a search warrant hinge upon the information contained within the four corners of the supporting affidavit. See, e.g., State v. Novembrino, 105 N.J. 95, 128 (1987); State v. Howery, 80 N.J. 563, 567 (1979), cert. den. 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979); State v. Fariello, 71 N.J. 552, 564 (1976); State v. Meighan, 173 N.J. Super. 440, 449 (App.Div. 1980), certif. den. 85 N.J. 122 (1980). In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), however, the United States Supreme Court held that as a matter of federal constitutional law a criminal defendant under certain circumstances must be allowed to challenge the validity of a search warrant on the basis of alleged false statements contained in a supporting affidavit. 438 U.S. at 155-156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. Mindful of the substantial impact that its decision would otherwise have on already over-burdened criminal trial calendars, see State v. Petillo, 61 N.J. 165, 177-178 (1972), cert. den. 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973), the Court stated that a defendant must make a "substantial preliminary showing of falsity" in the affidavit in order to be entitled to a *25 hearing. Franks v. Delaware, supra, 438 U.S. at 170, 98 S.Ct. at 2684, 57 L.Ed.2d at 681. In keeping with the overall objective of the exclusionary rule as a judge-made device to deter insolence in office, the Court emphasized that the defendant cannot rely on allegations of unintentional falsification in a warrant affidavit. Rather, he must allege "deliberate falsehood or ... reckless disregard for the truth." Id. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. These allegations should be supported by an offer of proof including reliable statements by witnesses, and they must be proved by a preponderance of the evidence. Ibid. Finally, the statements challenged as false must be material to the extent that when they are excised from the affidavit, whatever remains no longer establishes the requisite probable cause to support issuance of the search warrant. 438 U.S. at 171-172, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.
In State v. Howery, supra, our Supreme Court held that State constitutional requirements are coterminous with those of their federal counterparts. 80 N.J. at 568. Hence, "New Jersey courts, in entertaining veracity challenges, need go no further than is required as a matter of Federal Constitutional law by Franks v. Delaware, supra." Ibid.
While our research discloses no reported New Jersey opinion dealing with the precise issue, we have no hesitancy in holding that these principles apply with equal force to constitutional attacks upon search warrants based upon the claim that the supporting affidavits while facially sufficient nevertheless omit material facts. We hold that essentially the same factual predicate must be established in order to entitle the defendant to an evidentiary hearing. More specifically, the defendant must make a substantial preliminary showing that the affiant, either deliberately or with reckless disregard for the truth, failed to apprise the issuing judge of material information which, had it been included in the affidavit, would have militated against issuance of the search warrant. Cf. State v. Meighan, supra, 173 N.J. Super. at 448-449. Once a defendant *26 satisfies this threshold burden, he must be afforded an evidentiary hearing. If at such inquiry the defendant proves by a preponderance of the evidence that the affiant, deliberately or with reckless disregard for the truth, excluded material information from the affidavit which, had it been provided, would have caused the judge to refuse to issue the warrant, the evidence must be suppressed.
Applying these principles we find that defendant's request for an evidentiary hearing was materially deficient. At best, defendant claimed that the affidavit did not set forth all of the relevant information known by the affiant because it failed to disclose precisely where in the house the drug sales had occurred. Defendant never expressly alleged that the affiant, either deliberately or with reckless disregard for the truth, withheld vital information from the issuing judge. In light of this deficiency, we are of the view that the judge should not have accorded the defendant an evidentiary hearing. The validity of the search warrant should have been determined upon the information contained in the affidavit.
We have nevertheless decided to review defendant's arguments in light of the entire record including the evidence presented by the parties at the hearing. Although the State has made oblique reference to State v. Howery, supra, in its brief, both parties have chosen to argue the matter upon the common factual assumption that the drug sales described in the affidavit occurred in Till's bedroom and that defendant occupied a separate bedroom. The question thus presented is whether the warrant was unconstitutionally broad because it authorized the search of the entire house.

II
We commence our analysis with the fundamental principle that search warrants are strongly favored under the Federal and State constitutions. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 546-547 (1983), reh'g den. *27 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); State v. Kasabucki, 52 N.J. 110, 117 (1968); State v. Mark, 46 N.J. 262, 273 (1966); State v. Galvin, 161 N.J. Super. 524, 532 (App.Div. 1978); State v. Singleton, 158 N.J. Super. 517, 525 (App.Div. 1978), certif. den. 79 N.J. 470 (1978). The United States Supreme Court has repeatedly said that after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of a de novo review. Illinois v. Gates, supra, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546-547; Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590-91, 21 L.Ed.2d 637, 645 (1969); Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 726 (1964). Our Supreme Court has expressed similar sentiments in a long line of decisions. State v. Perry, 59 N.J. 383, 393-394 (1971); State v. Bisaccia, 58 N.J. 586, 589 (1971); State v. Kasabucki, supra, 52 N.J. at 117; State v. Mark, supra, 46 N.J. at 272. A grudging or negative attitude by reviewing courts is repugnant to the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745-46, 13 L.Ed.2d 684, 688-689 (1965). Once the issuing judge has made a finding of probable cause on the proof submitted and has issued a search warrant, a reviewing court is obliged to pay substantial deference to his determination. State v. Kasabucki, supra, 52 N.J. at 117. The facts should not be reviewed from the vantage point of twenty-twenty hindsight by interpreting the supporting affidavit in a hyper-technical, rather than a commonsense manner. United States v. Ventresca, supra, 380 U.S. at 109, 85 S.Ct. at 746, 13 L.Ed.2d at 689. The resolution of doubtful or marginal cases should be largely determined by the preference to be accorded search warrants. Ibid.
Viewed in the light of this commonsense, nontechnical and positive approach, see State v. Kasabucki, supra, 52 N.J. at 117; State v. Contursi, 44 N.J. 422, 431 (1965), we are satisfied that the facts set forth in the affidavit, as supplemented by the evidence presented at the hearing, established probable *28 cause to search the entire premises. The Fourth Amendment categorically prohibits the issuance of any warrant which does not "particularly" describe "the place to be searched and the persons or things to be seized." U.S. Const., Amend. IV. As recently noted by the United States Supreme Court, "[t]he manifest purpose of this particularity requirement was to prevent general searches." Maryland v. Garrison, ___ U.S. ___, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). "[B]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that [police activity] will be carefully tailored to its justifications, and will not take on the character of the wideranging exploratory searches the Framers intended to prohibit." Ibid. Hence, the scope of a lawful search is defined by the object of the investigation and the places in which there is probable cause to believe that it may be found. State v. Reldan, 100 N.J. 187, 195 (1985). See also Harris v. United States, 331 U.S. 145, 152-153, 67 S.Ct. 1098, 1102, 91 L.Ed. 1399, 1406-1407 (1947), reh'g den. 331 U.S. 867, 67 S.Ct. 1527, 91 L.Ed. 1871 (1947).
In the context of a multiple-unit building, the particularity requirement mandates that the warrant describe the specific subunit to be searched. State v. Ratushny, 82 N.J. Super. 499, 505 (App.Div. 1964). See also United States v. Votteller, 544 F.2d 1355, 1362-1363 (6 Cir.1976); United States v. Hinton, 219 F.2d 324, 326 (7 Cir.1955). A warrant which authorizes the search of an entire building when cause is shown for searching only one apartment is overly broad and invalid.[1] 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 4.5(b), at 215 (1987). See generally Annot. "Search Warrant: *29 Sufficiency of Description of Apartment or Room to be Searched in Multiple-Occupancy Structure," 11 A.L.R.3d 1330 (1967).
Although the question is of first impression in New Jersey, other jurisdictions have drawn a distinction between a multiple-unit building and a multiple-occupancy dwelling. See, e.g., State v. Teague, 469 So.2d 1310, 1312-1314 (Ala. Crim. App. 1985); Jackson v. State, 129 Ga. App. 901, 904-05, 201 S.E.2d 816, 819 (Ct.App. 1973); State v. Lehr, 258 N.W.2d 158, 159-160 (Iowa Sup.Ct. 1977); State v. Hymer, 400 So.2d 637, 638-639 (La.Sup.Ct. 1981); State v. Lorenz, 368 N.W.2d 284, 286-287 (Minn.Sup.Ct. 1985); State v. Coatney, 44 Or. App. 13, 18, 604 P.2d 1269, 1272 (Ct.App. 1980); State v. Willcutt, 19 Or. App. 93, 94-95, 526 P.2d 607, 608 (Ct.App. 1974); Poyner v. Commonwealth, 229 Va. 401, 411-12, 329 S.E.2d 815, 824 (Sup.Ct. 1985), cert. den. ___ U.S. ___, 106 S.Ct. 189, 88 L.Ed.2d 158 (1985); State v. Alexander, 41 Wash. App. 152, 154-55, 704 P.2d 618, 620-621 (Ct.App. 1985). The multiple-occupancy or community living exception is said to apply "where several persons or families occupy the premises in common rather than individually, as where they share common living quarters but have separate bedrooms." State v. Alexander, supra, 41 Wash. App. at 154-55, 704 P.2d at 620. Stated somewhat differently, "a multiple-occupancy structure is not automatically a multiple-unit structure." State v. Coatney, supra, 44 Or. App. at 18, 604 P.2d at 1272. The "essential ingredient" regarding the specificity requirement for search warrants in this context "relates not to the number of occupants but to the existence of separate units or subunits within a structure." Ibid. The mere fact that a structure contains several residents who are not related to one another "does not automatically convert its rooms into [separate and private] `subunits.'" Ibid. In the community living or multiple-occupancy situation, the courts have generally held that a "warrant describing the entire [dwelling unit] so occupied is valid and will justify a search of the entire premises." State v. Alexander, supra, 41 Wash. *30 App. at 154-55, 704 P.2d at 620. See also State v. Teague, supra, 469 So.2d at 1312-1314; Jackson v. State, supra, 129 Ga. App. at 904-05, 201 S.E.2d at 819; State v. Lehr, supra, 258 N.W.2d at 159-160; State v. Hymer, supra, 400 So.2d at 638-639; State v. Lorenz, supra, 368 N.W.2d at 286-287; State v. Coatney, supra, 44 Or. App. at 18, 604 P.2d at 1272; Poyner v. Commonwealth, supra, 229 Va. at 411-12, 329 S.E.2d at 824. Cf. United States v. Butler, 793 F.2d 951, 952-953 (8 Cir.1986); United States v. Gonzalez, 697 F.2d 155, 156 (6 Cir.1983); National City Trading Corp. v. United States, 635 F.2d 1020, 1024 (2 Cir.1980); United States v. Whitney, 633 F.2d 902, 907-908 (9 Cir.1980), cert. den. 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981); State v. Rodriguez, 198 N.J. Super. 569, 574 (App.Div. 1985).
The multiple-occupancy rule is predicated upon the thesis that occupants of a single living unit, whether related or not, generally have at least some access to each other's bedrooms. Each resident's reasonable expectation of privacy is thereby diminished. In his treatise, Professor LaFave offers this broad justification for treating community living situations differently than multiple-unit dwelling cases. 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, supra, § 4.5(b), at 219-220. He states:
[W]here a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants. Ibid.

Although the multiple-occupancy rule has received wide support in other jurisdictions, we need not determine whether it should be applied in all situations involving community living. We merely hold that under the facts of this case it was not unreasonable for the police to expect to find evidence of criminality in bedrooms other than that occupied by Till. We emphasize *31 that the residence here clearly was not an apartment, boarding house, or any other type of separately divided or partitioned multiple-unit building. It is undisputed that the occupants shared the kitchen, living room, bathrooms and all other common areas. Although each had his or her own bedroom, none of these was an independent living unit, separately locked, or otherwise identifiable as a private space. As we have emphasized, at the time of the detective's entry, the door of each bedroom was open and each occupant had complete access to the entire house. There was no indication that defendant had sole and exclusive control over his bedroom. Till could readily have concealed incriminating items anywhere in the house, including defendant's bedroom. These circumstances strongly militated in favor of a thorough search of the entire residence. The warrant authorizing the search of the entire premises was thus not overly broad and it was not incumbent upon the police to terminate their search upon finding drugs in Till's bedroom.
Accordingly, the trial judge did not err when he denied defendant's motion to suppress. The judgment of conviction is affirmed.
NOTES
[1] An exception to this rule exists where the multiple-unit character of the premises is not known or is not reasonably apparent to the officer applying for and executing the warrant. See State v. Wright, 61 N.J. 146, 149 (1972); State v. Shumann, 156 N.J. Super. 563, 566-567 (App.Div. 1978); State v. Hendricks, 145 N.J. Super. 27, 33 (App.Div. 1976).