**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1879-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PATRICK R. MULDROW, a/k/a
PATRICK R. MUDROW, PM
and PAT MO,

    Defendant-Appellant.

_____

Submitted October 19, 2020 – Decided March 3, 2021

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 05-10-1506 and 08-04-0637.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; Shiraz Deen, Assistant Prosecutor, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Patrick R. Muldrow appeals the September 26, 2018 order denying his petitions for post-conviction relief (PCR) without an evidentiary hearing. We affirm the order.

Ocean County Indictment No. 05-10-1506

In July 2005, an Ocean County Sheriff's officer received a tip from a citizen informant that there was a "good quantity" of drugs stored in a black duffle bag in a bedroom closet at a specific address in Lakewood. The police went to the house. Angela Ramos answered the door at the residence and signed a written consent to search. While they were searching the bedroom, Ramos made a phone call. The detective could overhear a male voice telling Ramos to get the police out of the house and to hang up. The detective found two bales of marijuana in a black duffle bag in a bedroom closet. A K-9 officer found additional marijuana under the bed of Ramos' roommate, Lisa Viggiano. Once Ramos was arrested, she named defendant as the owner of the drugs. A week later, defendant was arrested and found in possession of the phone Ramos called during the search. Both women testified against defendant at trial.

Defendant was indicted in October 2005 for fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3), and first-degree possession of marijuana with the intent to distribute, N.J.S.A. 2C:35-5(a)(1).  His motion to suppress was heard by Judge Wendel E. Daniels and denied in February 2007.  In June 2011,[1] defendant's motion to reconsider the suppression and other motions was denied by a different judge.

Defendant was tried on the charges.  He was acquitted of the possessory charges but convicted by the jury of two lesser included conspiracy offenses, which included fourth-degree conspiracy to possess and second-degree conspiracy to possess with intent to distribute marijuana.  He was sentenced to a nine-year term subject to a four-and-a-half-year period of parole ineligibility.  Defendant's sentence was to be served consecutively to a sentence he was serving under Indictment No. 08-04-0637.

We affirmed defendant's conviction and sentence in an unreported opinion but modified and remanded to the Law Division to amend the judgment of conviction to add an additional 833 days of jail credits.  State v. Muldrow (Muldrow I), No. A-5674-11 (App. Div. Oct. 10, 2014) (slip op. at 6).

---

[1]  Defendant was indicted, tried, and convicted on other charges, which we discuss hereafter.  This may account for the timing of this motion.

Ocean County Indictment No. 08-04-0637

During the week of December 9, 2007, David Fox, an investigator with the Ocean County Prosecutor's Office, "met with 'a reliable confidential informant' (CI) who provided him with information that an individual known as 'Pat Mo' was distributing narcotics and guns." State v. Muldrow (Muldrow II), No. A-5514-09 and No. A-0860-10 (App. Div. Apr. 2, 2013) (slip op. at 6–7). Another officer in the Lakewood Police Department, Sergeant James Van de Zilver, was "familiar" with defendant, confirming defendant fit the description and lived at the address provided. The CI identified defendant from a driver's license photo. Id. at 7.

The CI told officers he had purchased drugs from defendant at a property on Clearstream Road. Ibid. The CI claimed this property was used by defendant as a "stash residence." Ibid. Fox determined the utilities at this property were in the name of defendant's sister, but that defendant was listed as the customer contact. Ibid. Fox confirmed defendant lived at a house on Martin Luther King (MLK) Drive in Lakewood.

The police began to surveil the Clearstream property. Id. at 8. A few days later, they saw a pick-up truck drive into the Clearstream property.

> [Defendant] was the passenger. The officers observed
> him exit the truck, walk around the property with a

4

flashlight and remove a license plate from a car parked near the house and put it on another car, a tan Toyota Camry. [Defendant] placed a long, rectangular object in the trunk of the Camry before driving away. The next day, the surveillance team saw [defendant] park the Camry in the driveway of the Clearstream property, exit with a cardboard box, enter the back door of the residence, return to the car, re-enter the residence and then drive away.

[Id. at 6-7.]

The next week, the CI arranged a "controlled buy" of cocaine from defendant.

They set up surveillance at both the Clearstream and MLK properties.

At the Clearstream property, officers observed [defendant] drive into the driveway, enter "a camper trailer" at the rear of the property, exit about twenty seconds later, enter the house and exit moments later. [Defendant] then drove away. The car he used, a "dark colored, four door sedan," was registered to [defendant] at the MLK property.

In the presence of some of the officers, the CI called [defendant]. Fox listened to the conversation and heard ["]Pat Mo["] tell the CI to meet him at the MLK property to consummate the sale. Mobile surveillance teams followed [defendant], who drove directly from the Clearstream property to the MLK property.

Officers monitored the CI as he traveled to the MLK property with marked funds, exited his car, entered [defendant's] car, re-entered his own car a short time later and drove away. The CI met with the officers at a pre-arranged location and gave them the

white powdery substance he purchased from [defendant], which later tested positive for cocaine.

[Id. at 8-9.]

The CI advised the officers that defendant had guns hidden in his car and drugs hidden in abandoned vehicles. Id. at 9. The CI reported defendant was going to Georgia to purchase "a large number of guns." Ibid. In a phone call by the CI to defendant that Fox overheard, Fox heard defendant say he "was going to Georgia in the next couple days and that he would also have 'the other stuff' (meaning cocaine for sale)." Ibid.

Two search warrants were issued on January 15, 2008, based on this information for the MLK and Clearstream properties. Drugs and other evidence were seized from the Clearstream residence. There was a camper in the back yard of that property, owned by another individual, that they "cleared" looking for other individuals who might be there. Several firearms were "in plain view in the bathroom shower area of the camper." Id. at 10. An additional search warrant was issued later in the day to search the camper and two cars at the Clearstream property, which yielded weapons and drugs. Ibid.

In April 2008, defendant was indicted on multiple drug and weapons charges. The charges included: third-degree possession of cocaine, to N.J.S.A. 2C:35-10(a)(1) (count one); first-degree possession of cocaine in an

A-1879-18

amount of more than five ounces with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count two); fourth-degree possession of more than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(3) (count three); third-degree possession of between one ounce and five pounds of marijuana with the intent to distribute, N.J.S.A. 2C-35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count four); second-degree possession of a knife while engaged in drug activity, N.J.S.A. 2C:39-4.1(c) (count five); eight counts of second-degree possession of a firearm while engaged in drug activity, N.J.S.A. 2C:39-4.1(a) (counts six through thirteen). The firearms included two handguns, a BB rifle, four rifles and a shotgun. The charges included: fourth-degree possession of a knife by a convicted person, N.J.S.A. 2C:39-7(a) (count fourteen); and eight counts of second-degree possession of a firearm by a convicted person, N.J.S.A. 2C:39-7(b) (counts fifteen through twenty-two). These were the same firearms referenced in counts six through thirteen.

Defendant's motion to suppress evidence was heard by Judge Daniels on February 27, 2009. Defendant's counsel argued there was no probable cause to believe there were guns or drugs at the Clearstream property. The controlled purchase allegedly occurred at the MLK property. Counsel argued the search of the camper was made without a warrant.

7

The court found there was probable cause for the search warrant for the Clearstream property based on the totality of the circumstances. The court rejected the arguments contesting the search of the camper. Muldrow II, slip op. at 10.

Defendant was tried before a jury by a different judge and convicted. Defendant was tried separately on the certain persons not to have weapons charges (counts fifteen through twenty-two) and convicted.

Defendant was sentenced to an aggregate term of forty-years of incarceration with a twenty-year period of parole ineligibility. We affirmed defendant's convictions and sentence in an unreported decision on April 2, 2013. State v. Muldrow, No. A-0860-10 (App. Div. Apr. 2, 2013). We rejected the argument that the warrant for the Clearstream property lacked probable cause. Id. at 13.

> The surveillances connected [defendant] to the Clearstream property and the camper. The CI provided information that was independently corroborated by a controlled purchase, which occurred immediately after [defendant] visited the Clearstream property and drove directly to the site of the sale. Based upon the totality of the circumstances, there was sufficient probable cause to believe that there was evidence of a crime at the Clearstream property.
>
> [Id. at 13.]

Defendant's petition for certification was denied. State v. Muldrow, 216 N.J. 8 (2013).

PCR petitions

Regarding Indictment No. 08-04-0637, defendant filed a PCR petition on December 10, 2013, but it was dismissed without the appointment of counsel. Two other PCR petitions dated January 13, 2014 and July 15, 2014 were dismissed without appointment of counsel. The petitions alleged ineffective assistance of counsel for failure to call witnesses at trial and for failure to raise certain "meritorious" issues. Thereafter, we granted defendant's motion for summary disposition, and reversed and remanded the orders denying appointment of counsel. State v. Muldrow (Muldrow III), No. A-5827-13 (App. Div. Jan. 23, 2015).

Under Indictment No. 05-10-1506, defendant filed a pro se petition for PCR relief on February 26, 2015. Defendant raised the same issues of ineffective assistance.

PCR counsel's brief in support of the PCR petition argued that trial counsel provided ineffective assistance by not filing a Franks[2] application with the court. Defendant contended Fox's affidavit in support of the search

---

[2] Franks v. Delaware, 438 U.S. 154 (1978).

warrant for the Clearstream property lacked probable cause. He argued that "[t]he reasons given by Investigator Fox . . . all centered on the information given by the confidential informant." PCR counsel noted that on October 24, 2008, Angelo Pawlowski, who alleged he was the CI, provided an affidavit to Fox that the information he gave to Fox and the other police during the week of December 31, 2007 was false.

At the oral argument in July 2018, defendant supplied the PCR court with a copy of Pawlowski's affidavit. Defendant raised arguments that Judge Daniels should have recused himself because of the proximity of his own house to the Clearstream property. He alleged Judge Daniels used to be a prosecutor in one of his cases. Defendant claimed he told his defense counsel to file a Franks application. The court gave defendant thirty days to submit a supplemental submission.

The PCR petitions arising from indictments 05-10-1506 and 08-04-0637 were denied on September 26, 2018. In his written decision Judge Guy P. Ryan found that defendant's claims were procedurally barred because they previously were raised on appeal. Defendant alleged ineffective assistance of trial counsel for not challenging the search warrants for the Clearstream property, but trial counsel did in fact challenge the search warrants in the

motion to suppress and then again in the direct appeal. Our decision determined there was probable cause for the search warrants.

Judge Ryan rejected defendant's claim his counsel should have filed a motion challenging the search warrant of the Clearstream property under Franks. The court cited several reasons. Defendant never certified his attorney was actually aware of the affidavit nor was it ever established that Pawlowski was the CI. Defendant was not charged with any offense related to the controlled buy by the CI. Defendant did not allege that Fox was aware of the alleged falsity when he signed his affidavit in support of the search warrant. The PCR court concluded that probable cause was independently established by the police before the warrant's issuance.

The PCR court rejected defendant's argument that his counsel should have asked Judge Daniels to recuse himself, because he allegedly lived in the area. Defendant presented no proof of geographical proximity or that the judge had personal knowledge about the property where the search occurred. The PCR court found no evidence that Judge Daniels was previously involved with defendant.

The PCR court independently reviewed the search warrants and accompanying affidavit, finding there was probable cause. The PCR court

11

denied defendant's request for an evidentiary hearing because he did not show a prima facie case of ineffective assistance of counsel.

On appeal, defendant's counsel raises these issues for our consideration:

POINT I. DEFENDANT'S CLAIMS SHOULD NOT HAVE BEEN PROCEDURALLY BARRED.

POINT II. THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING REGARDING INDICTMENT NO. 08-04-637 BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SEEKING A FRANKS HEARING, AND PCR COUNSEL WAS INEFFECTIVE IN CONNECTION WITH A FRANKS HEARING FOR NOT SEEKING DISCLOSURE OF THE CONFIDENTIAL INFORMANT'S IDENTITY.

Defendant filed a pro se brief and appendix raising the following issues for our consideration on appeal:

I.      THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BASED ON THE INEFFECTIVE ASSISTANCE OF TRIAL AND PCR COUNSEL IN VIOLATION OF THE U.S. CONSTITUTION AMEND. VI AND N.J. CONSTITUTION ART. I ¶ 10.

II.     THE PCR COURT ERRED IN REFUSING TO RECOGNIZE THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL REGARDING THE RECUSAL ISSUES RELATING TO JUDGE DANIELS.

12                                                          A-1879-18

III. THE PCR COURT ERRED IN REFUSING TO RECOGNIZE THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN FAILING TO CHALLENGE THE INTEGRITY AND VERACITY OF THE WARRANT-OBTAINING PROCESS BY, IN PART, SEEKING DISCLOSURE OF THE C.I[.]'S IDENTITY.

IV. THE PCR COURT ERRED IN FAILING TO RECOGNIZE THE NEED FOR AN EVIDENTIARY HEARING REGARDING THE FAILURES OF THE STATE TO SATISFY ITS BRADY OBLIGATIONS.

V. PCR COUNSEL FAILED TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL.

VI. THE APPELLATE RECORD SHOULD BE SUPPLEMENTED BY EVIDENCE APPENDED TO DEFENDANT[] AND DEFENDANT'S FORMER PCR APPELLATE COUNSEL'S CERTIFICATIONS.

Defendant's pro se brief is not limited to the record before the PCR judge. Without having filed a motion to supplement the record, defendant added several pages of documents, including his own certification, which are dated after the PCR judge's decision. We do not address the materials added to the appendix by defendant that were not before the PCR judge. Defendant did not file a motion to supplement the record on appeal under Rule 2:5-5. Our decision is limited to the record before the PCR judge.

13                                                           A-1879-18

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that: (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

## A.

Defendant argues the PCR court erred by finding defendant's claims were procedurally barred on grounds they were previously raised on appeal. "[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." <u>State v. Preciose</u>, 129 N.J. 451, 476 (1992) (citing <u>R.</u> 3:22-5). Additionally, a

defendant is precluded from raising an issue on PCR that could have been raised on direct appeal. State v. McQuaid, 147 N.J. 464, 483 (1997); R. 3:22-4. The application of these standards requires the "[p]reclusion of consideration of an argument presented in post-conviction relief proceedings . . . if the issue raised is identical or substantially equivalent to that adjudicated previously on direct appeal." State v. Marshall (Marshall IV), 173 N.J. 343, 351 (2002) (quoting State v. Marshall (Marshall III), 148 N.J. 89, 150 (1997)). "[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." Preciose, 129 N.J. at 476 (citing R. 3:22-12).

Defendant contends his counsel was ineffective by not challenging the search warrants of the Clearstream property, but the warrants were challenged. The search warrants were the subject of motions to suppress. We determined the warrants were issued based on probable cause. Muldrow II, slip op. at 13. Counsel's performance was not deficient under Strickland when the search warrants were issued based on probable cause.

B.

Defendant argues that his trial and PCR counsel provided ineffective assistance because they did not request a Franks hearing based on the

15

Pawlowski affidavit. Pawlowski claimed to be the CI and that the information he provided to the police was false. Defendant alleges the false information was material in obtaining the search warrant.

The decision whether to grant an evidentiary hearing in a suppression motion is reviewed for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). A Franks hearing "is aimed at [search] warrants obtained through intentional wrongdoing by law enforcement agents and requires a substantial preliminary showing . . . ." Id. at 240. A hearing is required only where a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567-68 (1979) (quoting Franks, 438 U.S. at 171). A misstatement is material if, when excised, the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. Id. at 568 (citing Franks, 438 U.S. at 171). If, however, there still would be probable cause without this

misinformation, the warrant is valid and an evidentiary hearing is not needed. See State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987).

We agree with the PCR court that defendant's proofs did not satisfy the standards necessary for post-conviction review. There was no proof of the required element under Franks of "intentional wrongdoing by law enforcement agents." Broom-Smith, 406 N.J. Super. at 240. The Pawlowski affidavit did not allege that Fox, the affiant, knew the information was false. A second Franks requirement also was missing. There was no showing the "allegedly false statement [was] necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 156. There was no actual proof that Pawlowski was the CI. Even if he were, we agree with the PCR court that probable cause could be found from what Fox overheard on the calls and the surveillance at both the Clearstream and MLK properties. In fact, defendant was not charged with an offense from the controlled purchase through the CI. Therefore, defendant did not show proofs that qualified for a Franks hearing. Without proof of these prerequisites, counsels' performance cannot be considered to be ineffective assistance.

Defendant's pro se brief raises other arguments. Defendant alleges the judge who decided the suppression motions had a conflict of interest because he allegedly lived near the Clearstream property. The PCR court correctly rejected this as a "bald assertion." Defendant submitted a photograph of a house that he alleged was the judge's house. Even if this were factual, defendant did not explain how proximity constituted a disqualifying conflict, nor why his counsel's performance was not objectively reasonable by not raising this issue.

Defendant alleges the same judge had some involvement with him when the judge was a prosecutor. The PCR court found no proof of this.

There was no allegation of any bias by the judge and the search warrants were affirmed on appeal.

We conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We also are satisfied from our review of the record that defendant failed to make a prima facie showing of ineffectiveness assistance of trial or PCR counsel. Accordingly, the PCR court correctly concluded that an evidentiary hearing was not warranted. See Preciose, 129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1879-18