**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3796-23
A-3798-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

TROY SMITH,

    Defendant-Respondent.

_____

Argued January 7, 2025 – Decided January 27, 2025

Before Judges Susswein and Perez Friscia.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 24-02-0181 and 24-02-0182.

David M. Liston, Assistant Prosecutor, argued the cause for appellant (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the briefs).

Margaret McLane, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).

PER CURIAM

On leave granted, in these back-to-back appeals we have consolidated for the purposes of issuing a single opinion, plaintiff State of New Jersey appeals from the June 26, 2024 Law Division order granting defendant Troy Smith's motion to suppress certain evidence seized after the execution of the State's search warrant.  Having reviewed the record, parties' arguments, and applicable legal principles, we reverse and remand for further proceedings.

I.

In November 2023, after a reported increase in narcotics-related crimes in New Brunswick, the New Jersey State Police (NJSP) Weapon Trafficking Central Unit (WTCU) conducted several surveillance operations.  WTCU officers began surveillance of a house on Suydam Street, as law enforcement suspected a person was distributing controlled dangerous substances (CDS) from the home.  The officers specifically identified the person was distributing CDS from the first-floor residence of the two-family house on Suydam Street.  The officers observed the front of the house had "seven . . . steps" leading up to a porch with "two separate white . . . storm doors."  The left side of the house had a single door and five windows.  The officers believed the "right front door and the door on the left side of the residence, le[d] to the first-floor" residence.

2

During the surveillance, WTCU officers observed at the house several suspected hand-to-hand CDS transactions. Specifically, the officers witnessed a black male, later identified as defendant from multiple law enforcement databases, selling suspected CDS to individuals who walked up to the door on the left side of the Suydam Street house or to a window to the right of the door.

On November 29, WTCU officers observed an unidentified individual walk up to the door on the left side of the house and speak with someone through the window to the right of the door. Defendant opened the door and appeared to conduct a hand-to-hand CDS transaction, as the unidentified individual exchanged money for a clear baggie containing a substance.

Later that afternoon, the officers witnessed a white male walk up to the same door on the left side of the house. Defendant again appeared at the door and stepped out of the house to conduct a suspected CDS transaction. After the transaction, the officers maintained continuous surveillance on the white male, stopped him when he reached another street, and placed him under arrest. The officers found three wax folds of suspected heroin and one plastic bag of suspected cocaine in his possession. After the suspect received Miranda[1]

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3                                                      A-3796-23

warnings, he confirmed defendant sold and distributed the suspected CDS from the door and window on the left side of the Suydam Street house.

On December 5, WTCU officers again observed multiple individuals purchasing suspected CDS from the home while conducting surveillance at the house. During the third observed transaction, the officers witnessed a black male purchase, through the window on the left side of the house, a white substance, which he placed in an orange pill container. After WTCU officers stopped the individual, they discovered he had two wax folds of suspected heroin and suspected cocaine in the pill container.

WTCU officers checked defendant's criminal history and determined he had three prior indictable convictions, including a third-degree conviction for manufacturing or distributing CDS, N.J.S.A. 2C:35-5(a)(1). They also determined defendant's driver's license listed the Suydam Street house as his address.

On December 11, a NJSP WTCU detective applied to a superior court judge for two search warrants. The detective's application requested warrants to search the first-floor apartment of the "two-story, multi-family residence" at the Suydam Street house and defendant's person, because he believed defendant had committed CDS-related criminal offenses. The detective submitted an

4                                                                                          A-3796-23

affidavit attesting to personally observing defendant conduct "hand-to-hand narcotics transactions" and his belief that defendant "distribute[d] CDS and utilize[d] the . . . [p]remises to store, distribute, and/or stockpile CDS, along with evidence of . . . distribution." His affidavit specifically requested "the issuance of [a] [s]earch [w]arrant[]" for the first floor of the Suydam Street house and "any porch, hallway, laundry room, basement, garage, or other area where [defendant] has sole access to use or occupies." The detective's search request also "include[d] any office, refrigerator, closet, locker, safe, cabinet, desk, briefcase or other container, whether locked or unlocked, that may be found within the common area of such premises" because the detective had "found that individuals . . . involved in the illegal distribution of CDS will use these enclosures to store and hide evidence . . . and proceeds from the specified crimes." In support of the application, the detective referenced his training and experience with CDS investigations. He had narcotics "training and experience" "with the practices, methods, techniques, [and] equipment . . . used by those involved in . . . trafficking, distribution, possession, and use of [CDS]." The judge granted both search warrants after reviewing the State's applications.

On December 12, WTCU officers executed the search warrant.[2] They found CDS, including "[three] bricks and two bundles" of suspected heroin, in different locations of defendant's first-floor residence. The officers also found CDS and two handguns in the basement below his residence.

A Middlesex County grand jury returned two indictments against defendant on February 29, 2024. The first indictment, 24-02-00181, charged defendant with: third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (counts one, four, nine, and ten); third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(b)(5) (counts two and eleven); third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), (b)(3) (count five); second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1(a) (counts seven and eight); second-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(b)(4) (count twelve); and third-degree money laundering, N.J.S.A. 2C:21-25(a) (count thirteen). The second indictment, 24-02-00182, charged defendant with second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1) (counts one and two).

---

[2] We note the parties' merits briefs and transcript of the suppression proceeding reference the officers' body worn camera footage, but we were not provided the video recordings.

Defendant moved to suppress the evidence seized from the execution of the residence search warrant. On June 26, after hearing argument, the motion judge entered an order accompanied by an oral and written statement of reasons granting defendant's motion to suppress in part. The motion judge ordered the suppression of "all items seized from the basement of the premises searched," resulting in the dismissal of "[c]ounts 1, 2, 7[,] and 8 of Indictment No. 24-02-00181" and "Indictment [No.] 24-02-00182 in its entirety."

On August 5, we granted the State's motion for leave to appeal from the June 26 order. The State raises a single point for our consideration:

> POINT I
>
> THIS COURT SHOULD REVERSE THE TRIAL COURT'S JUNE 26, 2024 ORDER, WHICH ERRONEOUSLY SUPPRESSED EVIDENCE AND RELIED ON THAT ERRONEOUS SUPPRESSION TO JUSTIFY THE DISMISSAL OF FOUR COUNTS OF INDICTMENT NO. 24-02-00181 AND THE ENTIRETY OF INDICTMENT [NO.] 24-02-00182.

II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192

7

N.J. 224, 243 (2007)).  We should disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'"  State v. Boone, 232 N.J. 417, 426 (2017) (quoting Elders, 192 N.J. at 244).  However, we do not defer to the trial court's legal interpretations.  State v. Gartrell, 256 N.J. 241, 250 (2024).

"The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect individuals' rights 'to be secure in their persons, houses, papers, and effects.'"  State v. Andrews, 243 N.J. 447, 464 (2020).  The Warrant Clause of the Fourth Amendment "provides that 'no Warrants shall issue except upon probable cause, supported by Oath or affirmation.'"  State v. Gathers, 234 N.J. 208, 220 (2018) (quoting U.S. Const. amend. IV; accord N.J. Const. art. I, ¶ 7).

Search warrants must also "describe with particularity the places subject to search and people or things subject to seizure."  Andrews, 243 N.J. at 464 (citing U.S. Const. amend. IV & N.J. Const. art. I, ¶ 7).  "Before issuing a warrant, the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched."  State v. Sullivan, 169 N.J. 204, 210 (2001).

"Probable cause for the issuance of a search warrant requires a fair probability that contraband or evidence of a crime will be found in a particular place." Gathers, 234 N.J. at 223 (quoting State v. Chippero, 201 N.J. 14, 28 (2009)) (internal quotation marks omitted). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Boone, 232 N.J. at 427 (alteration in original) (quoting State v. Marshall, 199 N.J. 602, 611 (2009)).

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389). The same applies in situations where "the adequacy of the facts offered to show probable cause . . .

appear[] to be marginal." Jones, 179 N.J. at 388-89 (quoting State v. Kasabucki, 52 N.J. 110, 116 (1968)).

When reviewing the validity of a search warrant, the court must look to "the totality of the circumstances" to ascertain if there was probable cause. Chippero, 201 N.J. at 27. Our role is to determine whether the warrant application presented sufficient evidence for a finding of probable cause to search the location for the items sought. Id. at 32. "We do not review . . . to determine for ourselves as factfinders whether it actually established probable cause." Id. at 32-33. "The facts should not be reviewed from the vantage point of twenty-twenty hindsight." State v. Sheehan, 217 N.J. Super. 20, 27 (App. Div. 1987) (citing State v. Ventresca, 380 U.S. 102, 109 (1965)).

### III.

The State contends the motion judge erroneously suppressed lawfully seized evidence from defendant's basement, as the search warrant judge issued the warrant for defendant's premises based on the detective's affidavit, which sufficiently established probable cause. Specifically, the State argues reversal is warranted because the search warrant judge correctly found probable cause "extend[ed] to the basement" in authorizing the warrant, and deference should be afforded. We agree.

We are guided by the principle that as a reviewing court, we afford substantial deference to the issuing judge's finding of probable cause. The motion judge found the WTCU detective's affidavit established probable cause to search defendant's first-floor residence, but he determined there was insufficient probable cause to search the basement. In contending the motion judge erred in finding the detective's affidavit failed to address and provide probable cause to search the basement, the State highlights the detective's affidavit, which specifically requested, based on his training and experience, to search the portions of the residential premises that defendant occupied. The motion judge suppressed the evidence seized from the basement because:

> Defendant was never identified as utilizing any part of the basement to facilitate any hand-to-hand exchanges observed, either as a storage unit for narcotics nor as a repository for any proceeds from those exchanges. In fact, there is nothing mentioned about a basement in the [a]ffidavit nor whether . . . [d]efendant had access to it. To suggest that he did simply because he lived on the first floor of this multi-family dwelling would be unsupported by any of the facts proffered.

The motion judge emphasized the officer "did[ not] ask to search the basement," and although the affidavit "mention[ed] the house, [it] did[ not] mention anything about a basement." Our review of the affidavit contradicts the motion judge's findings. The detective's affidavit specifically requested in two places

11

to search the basement and provided evidential support based on his amply recited observations and CDS training.

The affidavit noted the "[p]remises is a two-story, multi-family residence" and the front "left . . . door leads to the second floor and . . . the door on the left side of the residence, leads to the first floor." The photograph included in the affidavit depicts seven steps leading up to the porch and two front doors, which are raised above ground level. Thus, the photograph fairly showed an area below the first-floor residence. "There is a driveway" on the left side of the house. An arrested suspect confirmed defendant was distributing suspected CDS "out of the . . . side door and window," which based on the description and photograph, appeared to be at ground level and opened to the driveway. The detective attested that "based on observations by NJSP WTCU detectives, statements from arrestees, and police reports from New Brunswick City Police Department it is believed . . . the right front door and the door on the left side of the residence[] lead[] to the first floor." During the surveillance conducted on November 29 and December 5, 2023, WTCU detectives observed defendant engaging in multiple hand-to-hand transactions from the door and window on the left side of his residence.

Further, the detective's affidavit delineated his specialized CDS distribution investigation experience. After requesting to search the basement and locked or unlocked places where evidence of criminality may be stored, the detective explained, "I have found that individuals that are involved in the illegal distribution of CDS will use these enclosures to store and hide evidence of and proceeds from the specified crimes." The detective attested to his belief that defendant "store[d], distribute[d], and/or stockpile[d] CDS" on the premises. Further, the detective's affidavit recited defendant's prior conviction for drug distribution, which was also a relevant factor for the search warrant judge's consideration. See Jones, 179 N.J. at 391 ("[A] suspect's criminal history is . . . germane to a search analysis.").

A review of the four corners of the detective's affidavit reveals the request to search defendant's premises was sufficiently specific. The detective limited the search request to the areas of defendant's premises that he "used or occupie[d]," and the detective believed were connected to the first-floor unit and CDS distribution. He did not seek to search the second-floor residence or any attic space. Even without providing the search warrant judge the required substantial deference, it was reasonable to conclude the first-floor residence had access to a basement area reachable by the door on the left side of the house,

just as the second floor would similarly have access to an attic. Again, the officers viewed defendant conducting suspected CDS transactions from the door and window on the left side of the house along the driveway, which appeared to be below the residence's entrance level. Had the warrant lacked the requisite specificity and instead authorized a search of the entire multi-family residence, we would agree that evidence seized would be subject to suppression. Sheehan, 217 N.J. Super. at 28 ("In the context of a multiple-unit building, the particularity requirement mandates that the warrant describe the specific subunit to be searched."). Therefore, we conclude the search warrant judge's finding of probable cause, based on his review of the detective's attested to observations and CDS experience, was sufficiently supported to issue the warrant for the first-floor residence, including the "basement" as an "area to be searched," because there was a probability that evidence of criminality would be found in the premises defendant occupied.

We reiterate and stress that "[o]nce the issuing judge has made a finding of probable cause on the proof submitted and has issued a search warrant, a reviewing court is obliged to pay substantial deference to his determination." Sheehan, 217 N.J. Super. at 27 (citing Kasabucki, 52 N.J. at 117). Even if we were to find the supporting information "marginal," which we do not, we are

14

bound to resolve the doubt by sustaining the search. Jones, 179 N.J. at 388-89; see also Keyes, 184 N.J. at 554 (quoting Jones, 179 N.J. at 389).

For these reasons, we part ways with the motion judge and conclude the "application for [the] warrant . . . satisf[ied] the issuing authority 'that there [wa]s probable cause to believe that a crime ha[d] been committed, or [wa]s being committed, at a specific location or that evidence of a crime [wa]s at the place sought to be searched.'" Boone, 232 N.J. at 426 (italicization omitted) (quoting Jones, 179 N.J. at 388). We recognize the search warrant judge had to "make a practical, common sense determination whether, given all of the circumstances, there [wa]s a fair probability that contraband or evidence of a crime w[ould] be found in a particular place." Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). In sum, after reviewing the record and according the search warrant judge the required substantial deference, we are constrained to reverse the motion judge's order suppressing the evidence found in defendant's basement and remand for reinstatement of Indictment No. 24-02-00182 and counts one, two, seven, and eight of Indictment No. 24-02-00181.

To the extent we have not addressed defendant's remaining arguments, we determine they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16