**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3162-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS A. PEGUERO-NIN,
a/k/a, LUIS A. NIN,
LUIS A. PEGUERONIN,
and LUIS A. PEGUERO,

     Defendant-Appellant.

_____

Submitted November 15, 2021 – Decided December 6, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 18-03-0039.

Hunt, Hamlin & Ridley, attorneys for appellant (Raymond L. Hamlin, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Daniel Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Luis A. Peguero-Nin pleaded guilty to first-degree promoting organized street crime, N.J.S.A. 2C:33-30(a), and third-degree distribution of controlled dangerous substances, N.J.S.A. 2C:35-5(a)(1). He appeals from a February 19, 2019 order denying his motion to suppress evidence seized following execution of two search warrants at a Pearl Street address in Paterson.[1] He contends the affidavits supporting the search warrants contained false information he resided at the Pearl Street address, and for that reason, the court erred by denying his request for a Franks[2] hearing. Unpersuaded by defendant's argument, we affirm.

I.

In December 2017, New Jersey Division of Criminal Justice (DCJ) detective Russell Kingsland presented a Law Division judge with an affidavit in support of a request for search warrants for three apartments and five vehicles,

---

[1] Defendant also appeals from an April 23, 2019 order denying his motion to dismiss count twenty-six of the indictment. In his brief on appeal, defendant does not offer any argument challenging the April 23, 2019 order. We therefore do not address the order other than to note it is affirmed. See State v. Shangzhen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018) (explaining, "claims that have not been briefed are abandoned on appeal"); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021) ("[A]n issue that is not briefed [on appeal] is deemed waived.").

[2] Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

and arrest warrants for defendant and eight other individuals. The affidavit described an investigation that commenced in July 2017, and involved surveillance, purchases of narcotics by a cooperating witness, and intercepts of telephone communications. The affidavit stated "[t]he investigation revealed" defendant is a "cocaine supplier" to Jeffrey Jaquez, a cocaine distributer "in and around Paterson, New Jersey."

The affidavit described four controlled purchases of cocaine from Jaquez by the cooperating witness, and defendant's involvement in supplying Jaquez with the cocaine he sold to the witness. As explained in Kingsland's affidavit, during intercepted telephone conversations Jaquez ordered the cocaine from defendant that Jaquez needed to supply the cooperating witness. "On several occasions," DCJ detectives observed defendant "met [with] Jaquez to make the exchange . . . and then close [there]after, Jaquez met with the [cooperating witness] with the product."

Kingsland explained that "physical surveillance, electronic surveillance, information from informants and phone calls intercepted pursuant to . . . [w]iretaps" provided probable cause to believe that defendant and two other individuals, identified as Gaby and Gingo, "utilize[d] the [Pearl Street] residence . . . in furtherance of distributing narcotics and weapons." Kingsland

further stated "[i]t is known through [a confidential informant] that 'Gaby' and 'Gingo' both live with [defendant] at" the Pearl Street address. According to Kingsland, on several occasions DCJ detectives observed Gaby and Gingo leave the Pearl Street address "and deliver product or money to individuals" as directed by defendant.

More particularly, Kingsland explained that during an October 27, 2017, intercepted telephone communication defendant directed a cocaine supplier to the Pearl Street address to receive a payment from Gaby for a narcotics transaction. DCJ detectives observed the supplier arrive in front of the Pearl Street address, where Gaby entered the supplier's vehicle for two minutes, and then exited. A few minutes later, during an intercepted phone call between defendant and the supplier, the supplier informed defendant that Gaby overpaid him.

Later that same day, defendant received a call from an unidentified male who sought to obtain "a big one" from defendant. Based on his experience, Kingsland understood "a big one" to refer to a quantity of narcotics. Defendant told the caller he was in Pennsylvania but "Gaby is there [at] the house" and "Gaby is home." Defendant then said, he was "going over there now."

4

According to Kingsland's affidavit, on December 2, 2017, defendant received a call from another unidentified male and negotiated a sale of narcotics. Defendant indicated he would bring the narcotics to the caller. Less than ten minutes later, defendant arrived at the Pearl Street address, entered the house, remained for six minutes and then departed. Kingsland stated it was his belief defendant "stashe[d] narcotics at" the Pearl Street address "and left the residence . . . to deliver the narcotics."

On December 4, 2017, defendant received a call from another unidentified male. The caller sought from defendant what the detectives, based on their experience and investigation, understood to be a firearm. The caller was with Gingo and he told defendant they were "in front of [defendant's] house." Defendant asked the caller to put Gingo on the phone so Gingo could "go up and get it." Defendant then directed Gingo to the "'Rollo' that is up there, in the middle drawer." As defendant directed Gingo on the phone to retrieve the gun, DCJ detectives observed Gingo exit the vehicle and enter the Pearl Street address. Later that day, the same unidentified male again called defendant, stating he "want[ed] to take the small one, because the little one can be concealed easier." Kingsland understood the discussion to describe the unidentified male's interest in obtaining a smaller firearm from defendant.

In his affidavit, Kingsland described the Pearl Street address as "multi-story, multi-family house" that is "divided into two floors, both accessed by the white front door on the first level" and had "two mailboxes on the front of the house." Kingsland sought a search warrant for the second-floor apartment. The court issued the requested search warrant.

Later the same day, DCJ detectives executed the search warrant at the Pearl Street address. They discovered defendant did not reside at the second-floor apartment. The occupant of that apartment informed the detectives there was an attic-apartment located on the third floor of the premises. The occupant described the attic-apartment's occupant, and the detectives determined the description matched defendant. Officers entered the attic-apartment to secure it, and, after determining no occupants were present, they applied for an amended search warrant.

DCJ Detective Sergeant Patrick Sole submitted an affidavit seeking an amended search warrant for the third-floor attic-apartment. Sole's affidavit incorporated by reference the information included in Kingsland's affidavit. Sole further stated "occupants" of the second-floor apartment "informed" DCJ detectives that defendant "lives upstairs." Sole also stated that information received in response to a subpoena issued to Public Service Gas & Electric

6

(PSE&G) showed "only two apartments" at the Pearl Street address. He noted "[t]he attic apartment appears to be an illegal, unauthorized apartment."

The court issued an amended search warrant for the third-floor attic-apartment. A search of the apartment resulted in the seizure of "three handguns, heroin in excess of [five] ounces, CDS paraphernalia for packaging and distribution, U.S. currency, and a knife."

Defendant moved to suppress the evidence. He argued the search warrant affidavits lacked sufficient facts supporting a finding of probable cause he resided at the Pearl Street address. He also claimed Sole's affidavit inaccurately stated that occupants of the second-floor apartment said "defendant lives upstairs in an attic apartment" while a DCJ investigation report stated only the second-floor resident had "described" an individual "matching" defendant's description as the occupant of the attic-apartment. Defendant argued the alleged inaccuracy in the affidavit required that the court conduct a Franks hearing.[3]

In a detailed opinion issued from the bench, the court denied defendant's request for a Franks hearing and his motion to suppress. The court summarized the information contained in Kingsland's affidavit, detailing the instances where

---

[3] Defendant does not reprise this argument on appeal, and the State therefore does not address it in its opposition brief. We therefore do not consider it. See Shangzhen Huang, 461 N.J. Super. at 125.

defendant utilized the Pearl Street address to conduct transactions, referred to it as home, and demonstrated "intimate knowledge of [the] house" by directing Gingo to obtain firearms from the apartment. The court determined Kingsland's affidavit established probable cause to believe defendant resided at the Pearl Street address. The court rejected defendant's request for a Franks hearing, finding any discrepancy between Sole's affidavit and the investigation report concerning the information provided by the second-floor resident did not establish either a deliberate falsehood or reckless disregard for the truth required to establish an entitlement to a Franks hearing.

As noted, defendant pleaded guilty to promoting organized street crime and distribution of CDS. The court sentenced defendant in accordance with the plea agreement. This appeal, challenging the court's order denying defendant's suppression motion, followed.

Defendant presents the following argument for our consideration:

POINT ONE

THE MOTION COURT WAS IN ERROR BY FAILING TO FIND THAT THE DEFENDANT PROVIDED SUFFICIENT INFORMATION TO MERIT A HEARING PURSUANT TO FRANKS V[.] DELAWARE[.]

II.

A search executed pursuant to a warrant enjoys a presumption of validity. State v. Marshall, 199 N.J. 602, 612 (2009). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 388-89 (2004)). The defendant bears the burden of challenging the search and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause for a search warrant exists where, "given all the circumstances" set forth in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Demeter, 124 N.J. 374, 380-81 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); see also Marshall, 199 N.J. at 610 (explaining a search "warrant should not issue unless the court is satisfied that there is 'probable cause to believe a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched'" (quoting State v. Sullivan, 169 N.J. 204, 210 (2001))).

"When reviewing the issuance of a search warrant by another judge, the [motion] judge is required to pay substantial deference to the [issuing] judge's

determination." State v. Dispoto, 383 N.J. Super. 205, 216 (App. Div. 2006). Where a defendant challenges the veracity of a search warrant affidavit, a Franks hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. The defendant "must allege a 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171).

A defendant must also prove the allegations supporting the request "'by a preponderance of the evidence' and that false statements in the affidavit 'must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause.'" State v. Desir, 245 N.J. 179, 197 (2021) (quoting Howery, 80 N.J. at 568). If a search warrant affidavit contains sufficient facts establishing probable cause even after the alleged false statements are excised, a Franks hearing is not required. Franks, 438 U.S. at 171-72.

We review a court's decision regarding the need for an evidentiary hearing for an abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). An abuse of discretion occurs when a court's "decision [is] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Defendant makes a focused and precise argument on appeal. He claims the court erred by denying his request for a Franks hearing. He contends Kingsland's affidavit did not establish probable cause he resided at the Pearl Street address and that the information obtained from PSE&G demonstrated defendant was not a resident at the address. Defendant argues the PSE&G information should have been provided in support of the search warrant, and its omission was material to the "issuance of the search warrant."

The motion court did not abuse its discretion by denying defendant's motion for a Franks hearing. In the first instance, defendant failed to make any showing the information in Kingsland's affidavit supporting probable cause defendant resided at the Pearl Street address was deliberately false or was provided in reckless disregard of the truth. See Howery, 80 N.J. at 567

11

("[D]efendant must make a 'substantial preliminary showing' of falsity in the warrant." (quoting Franks, 438 U.S. at 170)).

Probable cause defendant resided at the address was founded on Kingsland's statements that: the confidential informant said defendant resided at the address; during the intercepted calls defendant referred to the address as home and others referred to it as defendant's house; during intercepted calls defendant demonstrated an intimate knowledge of where a firearm was located within the residence by directing others to retrieve it; and surveillance established defendant's access to the residence and use of it during drug transactions. Defendant does not address those factual assertions, claim they are false, or contend they do not establish probable cause defendant resided at the address. See id. at 567-568. Thus, the motion court did not abuse its discretion by concluding "there was sufficient information in the affidavit that the defendant used, occupies, utilized, lived or resided at that address."

Defendant suggests Kingsland's affidavit was false because it did not disclose other information known to law enforcement that defendant contends undermined the assertion he resided at the Pearl Street address. Defendant contends Kingsland's affidavit did not inform the court defendant's automobile was registered at a Pennsylvania address, defendant's complaint-warrant

12

identifies his address at a location different than the Pearl Street address, and the PSE&G information did not identify defendant as a resident at the Pearl Street address.

"There is no requirement that a warrant affidavit fully describe all steps taken [and] all information obtained . . . during the course of an investigation," State v. Smith, 212 N.J. 365, 398-99 (2012), but a "[m]aterial omission . . . may . . . invalidate [a] warrant," State v. Marshall, 148 N.J. 89, 193 (1997). To obtain an evidentiary hearing challenging a search warrant based on a material omission, a defendant must establish "essentially the same factual predicate" as under the Franks standard. State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987). A defendant must make "a substantial preliminary showing that the affiant, either deliberately or with reckless disregard for the truth, failed to apprise the issuing judge of material information" and must show the inclusion of the omitted information "would have militated against issuance of the search warrant." Ibid. Defendant made no such showing here.

As noted, the facts set forth in Kingsland's affidavit provided probable cause to believe defendant resided at the Pearl Street address. The alleged omitted information, even if accepted as true, does not establish that the facts in Kingsland's affidavit are false. That defendant may have had a car registered to

13

a Pennsylvania address or defendant had more than one purported residential address, does not render false the facts in Kingsland's affidavit providing probable cause defendant used the Pearl Street address as his residence. Indeed, during one of the intercepted calls cited in Kingsland's affidavit, defendant said he was in Pennsylvania, but "Gaby . . . is there in the house," and defendant was "going over there now." Defendant's ties to Pennsylvania did not preclude him from having a presence, and a residence, in New Jersey. Similarly, the fact that defendant was not identified as a resident at the Pearl Street address on information obtained from PSE&G information does not establish defendant did not reside at the address. The information also does not render the facts in Kingsland's affidavit false; there are many residents whose names are not associated with the utility bills for homes in which they reside.

Defendant was not entitled to a Franks hearing because he failed to make any showing Kingsland's affidavit contained false information or deliberately or with reckless disregard for the truth omitted material facts to the search warrant judge. See Sheehan, 217 N.J. Super. at 25. The court therefore did not abuse its discretion by denying defendant's request for a Franks hearing.

We also observe that even assuming defendant made the requisite showing Kingsland deliberately or with reckless disregard for the truth asserted false

14

facts or omitted material facts related to defendant's residence at the Pearl Street address, defendant is not entitled to a <u>Franks</u> hearing because the affidavit established probable cause to search the address without regard to whether it was defendant's residence. Even if the factual assertion defendant resided at the address is excised from Kingsland's affidavit, the affidavit "contains facts sufficient to establish probable cause," <u>Desir</u>, 245 N.J. at 197 (quoting <u>Howery</u>, 80 N.J. at 568), to search the residence on the upper floor of the Pearl Street address.

"Probable cause for a warrant requires proof 'to believe that a crime has been or is being committed at a specific location or that evidence of a crime is at the place to be searched.'" <u>State v. Lunsford</u>, 226 N.J. 129, 149 (2016). In making that determination, the issuing judge must "consider the totality-of-the-circumstances to determine whether the State has established probable cause." <u>State v. Gathers</u>, 234 N.J. 208, 223 (2018).

In his affidavit, Kingsland provided considerable information, none of which defendant claims is false, establishing defendant, Gaby, and Gingo utilized the upper floor of the Pearl Street address to distribute CDS and store and distribute weapons. During an intercepted call, defendant directed Gingo to "go up" to retrieve a firearm and defendant said the firearm is "up there,"

15

referring to what the detectives understood was only a two-story residence at the Pearl Street address. Defendant's statements supported a reasonable inference that he referred to the second-floor residence at the Pearl Street address since, at the time Kingsland submitted his affidavit, he understood the address included only two apartments, one of which was on the second floor.[4]

Kingsland's affidavit included ample evidence supporting "a practical, common[-]sense determination [that] . . . there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place" for which the search warrant was issued. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). Thus, the affidavit established probable cause to search the Pearl Street address whether it was defendant's residence or not. As a result, even if the factual assertions or alleged omissions pertinent to whether the address served as defendant's residence were

---

[4] When the DCJ detectives later discovered defendant did not reside in the second-floor residence, and that the Pearl Street address included a third-floor attic apartment, the same reasonable inference that supported probable cause to search the second-floor residence, as supplemented by the knowledge defendant did not reside on the second floor, supported probable cause to search the attic apartment. That is the case without regard to whether the occupant of the second-floor apartment said defendant resided in the third-floor apartment or simply provided a description of the resident of the third-floor apartment that matched defendant because there is no evidence there was any other separate residence on the upper floors of the Pearl Street address.

deliberately false or made in reckless disregard for the truth, no <u>Franks</u> hearing was required because the affidavit otherwise established probable cause for the search. <u>Desir</u>, 245 N.J. at 197.

We therefore affirm the court's order denying defendant's motion for a <u>Franks</u> hearing. We reject defendant's singular argument on appeal, that the court abused its discretion by denying his request for a hearing because Kingsland's affidavit contained false assertion of fact, and material omissions, concerning defendant's alleged residence at the Pearl Street address. To the extent any other arguments might be gleaned from defendant's brief on appeal, they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3162-19